Robinson *v.* Rice.

---

ROBINSON *et al.*, Appellants, *vs.* RICE *et al.*, Respondents.

1. It has been repeatedly held that, under the new practice, multifariousness is still an objection to a pleading. Different causes of action against different parties cannot be joined.
2. A husband in possession of slaves under a will which gives his wife a life estate, cannot pass an absolute estate to a purchaser.

3. Under the new practice, a party cannot state one cause of action, and ask that, if it proves unfounded, another cause of action may be tried. That is not a joinder of several causes of action.

4. Where a vendor is in possession of personal property, and sells for full value, a warranty of title is implied.

5. Where a cause is tried by a court without a jury, the supreme court will affirm if the facts found support the judgment, without regard to the instructions given or refused.

6. The supreme court cannot review the action of the inferior court upon a motion to strike out parts of an answer, when they are only referred to in the record by line and page of the original.

### Appeal from Cole Circuit Court.

This was an action under the new practice, commenced by the widow and heirs of James F. Clendenin, against S. O. Rice, and the heirs of Jane Lowe, and against S. O. Rice and Perry Askens, guardians for some of said last named heirs, for the specific recovery of two slaves, named Matthew and Mary, children of a negro woman named Emily.

In 1829, Joab Barton died, leaving a last will, by which he bequeathed Emily and her increase to his daughter, "Jane Lowe, wife of Charles Lowe, for and during her natural life, and after her death, to her children, in full property forever." After the death of Barton, Lowe took possession of Emily, who afterwards gave birth to two children, Mary and Charity. About 1836, Lowe sold and delivered Emily, Mary and Charity to James F. Clendenin, for the sum of $650. Afterwards, Emily gave birth to Matthew and two other children. In 1842, Clendenin sold Emily and her two youngest children to one Overton. The petition states that Charles Lowe died about the month of February, 1846, and that his wife, Jane Lowe, died about the same time. The answer admits that Lowe and his wife died about the time stated in the petition; but in a subsequent part of the answer, it is alleged that Jane Lowe died on the 25th of January, 1845, and the court found that both Lowe and his wife died in 1845. The slaves, Mary, Matthew and Charity remained in possession of Clendenin up to his death, in January, 1846. About 1849, William Morrison and his

wife, Mary, daughter of J. F. Clendenin, removed to Texas and took Charity with them, and had not returned at the commencement of this suit. Clendenin, at his death, left three children, and a widow, who afterwards intermarried with Isaac L. Robinson. Robinson and wife and Morrison and wife, together with the other two children of Clendenin, were the plaintiffs in this action. The slaves, Mary and Matthew, remained in possession of the widow, administrator and heirs of, Clendenin after his death until March 10, 1851; when they came into possession of S. O. Rice, one of the defendants. Rice was guardian of two of Lowe's children, and it would appear from the answer that he married one of Lowe's daughters, although it is not distinctly alleged, nor was there any proof upon the subject. Letters of administration were granted on the estates both of Lowe and Clendenin, and they had been finally settled when this suit was begun. Lowe left some personal estate, which was distributed among his heirs at the close of the administration, and also real estate which descended to his heirs.

The plaintiffs, in their petition, stated that the defendant, Rice, wrongfully obtained possession of the slaves and unlawfully detained the same. They prayed judgment for their restitution, and damages for the unlawful detention. The petition then proceeded to state that when Lowe sold the slaves to Clendenin, he executed a bill of sale containing a covenant of warranty, which had been lost.

The plaintiffs claimed that Clendenin acquired an absolute estate by the purchase from Lowe, and that they, as his heirs, were entitled to the slaves; but if the court should be of a different opinion, then they prayed a decree against the heirs of Lowe upon his covenant of warranty.

The defendants answered, setting up title under the will of Joab Barton. They alleged that the plaintiff, Robinson, carried the two slaves named in the petition to Arkansas, and when pursued, voluntarily delivered them up to the defendant, Rice, upon demand, without any force being used. They admitted the

sale from Lowe to Clendenin, but insisted that Lowe only sold an estate for his wife's life, and denied any knowledge of a bill of sale with warranty. In conclusion, they prayed judgment for the return of Charity or for her value, for the value of her hire from the death of Jane Lowe up to the present time, for the hire of Mary from the same date up to the time when she came into possession of Rice, and for the expenses of Rice in getting Mary and Matthew back from Arkanaas, whither they had been taken by Robinson.

The record shows that a motion to strike out portions of the answer, which are referred to merely by line and page of the original, was overruled. The cause was heard by the court without a jury, and the facts found substantially as above stated. It was found as a fact that when Lowe sold to Clendenin, he executed a bill of sale containing a covenant of warranty. It was admitted that a suit was pending in Callaway county by the defendants against Overton, for the recovery of the slaves sold to the latter by Clendenin. During the progress of the trial, exceptions were taken to the admission and exclusion of evidence, which it is not thought necessary to notice. At the close of the evidence, several declarations of law, in the form of instructions, were asked on both sides, some of which were given and some refused. The court declared that neither plaintiffs nor defendants were entitled to any relief, and dismissed the petition, from which judgment the plaintiffs appealed.

*Morrow, White* and *Parsons*, for appellants. 1. The motion to strike out so much of the answer as relates to the alleged torts and conversions of Morrison and Robinson should have been sustained. The other appellants could not be affected by wrongful acts to which they were not parties. This part of the answer surely cannot be sustained by the law of set-off. The objection applies with equal force to the claim for hire. (New Practice Act, art. 6, sec. 7. *Sappington* v. *Jeffries*, 15 Mo. Rep. 630. *Nidelet* v. *Wales*, 16 Mo. Rep. 214.) 2. This court held in *Freeman* v. *Freeman & Challis*, (9 Mo. Rep.,) that the husband is in law trustee of his wife's

property, unless another trustee is appointed. This being the case, the sale by Lowe passed the title. If he was guilty of a breach of trust, his estate was amply sufficient to compensate the heirs of the wife in damages. The evidence shows that this was a *bona fide* sale. There is no evidence of notice of the will. It was not recorded, as required by law. (R. C. 1825, 792, sec. 9. 2 Story's Eq. 289, 290.) 3. The heirs of Lowe are bound by his covenant of warranty, even though not expressly named in it; and Lowe's estate having descended and been distributed, they are liable to the extent of the value of the property descended or distributed. (*Booth* v. *Starr*, 5 Day's Rep. 419. *Boyce* v. *Burnet*, 12 Mass. 410. *Hutchison* v. *Stiles*, 3 N. H. Rep. 408. 1 Little's (Ky.) Rep. 397. 20 Pick. 2. 3 Murphy 580. 2 B. Monroe, 63. 4 Kent, 419.) This being a sale of personal property for a fair price by the party in possession, the law implies a warranty of title. (2 Kent, 478.) 4. The dismissal of the plaintiffs' petition leaves them without relief, and still liable upon their ancestor's covenants of title for the slaves sold to Overton, if any such covenants are outstanding. 5. The appellants having obtained possession of the slaves lawfully, under the belief that their title was good and absolute, cannot be required to account for their hire, until after a demand by some person having a better title.

*Edwards* and *Gardenhire*, for respondents. 1. Lowe's heirs were not bound by his covenant of warranty unless expressly named in it. (Rawle on Covenants, 438. Smith on Contracts, 20, 21. *Loyd* v. *Thursby*, 9 Mod. 163.) 2. The plaintiffs' suit was properly dismissed. They were asking equitable relief against the heirs of Lowe upon his warranty, and yet they did not offer to return the slave, Emily, and her two children sold to Overton, nor Charity, who had been carried to Texas by two of the plaintiffs. Those who ask equity must do equity. 3. The other defendants are not liable for the trespass of Rice, if the action is sought to be maintained on that ground.

SCOTT, Judge, delivered the opinion of the court.

1. This is a proceeding under the 8th article of the present practice act, respecting the claim and delivery of personal property. Samuel O. Rice is the only person complained of as committing the alleged grievance, in taking away the two slaves for whom suit is brought. This being the nature of the complaint, it is difficult to perceive why so many others were made defendants. There is certainly a misjoinder.

It has been repeatedly held that multifariousness is an objection which is not taken away by the present practice act. If the defendant, Rice, has trespassed, why keep the other parties in court, waiting the trial of an issue in which they have no concern? The petition shows no right in Rice to take the slaves. As guardian, he had no right to sue in his own name to recover slaves belonging to his wards, which slaves had never been in his possession. Rice could not be sued in trespass as a guardian, for his own act. If he committed a trespass, he was liable for it in his own right, and could not qualify his wrong by maintaining that he did it as a guardian. It does not appear that Rice had any claim in right of his wife. Indeed, it is not shown that he married one of Lowe's daughters.

2. But, although it is shown that Rice had no right to take the slaves, yet, as the plaintiffs claim under James F. Clendenin, who purchased from Charles Lowe, who only had an estate in the slaves during his wife's life, and as Lowe's wife was dead, they had no right to recover them. There is no ground for the assumption, that Lowe was a trustee for his wife, and as trustee, was competent to convey the legal title to the slaves to a *bona fide* purchaser. The case of *Freeman* v. *Freeman & Challis*, (9 Mo. Rep.,) is not in point. That case only maintains that, where there is separate property settled on the wife, and no trustee is appointed, the law will make the husband a trustee. Here there was no separate property in Mrs. Lowe: there is nothing to show that any such thing was contemplated by Joab Barton. The slave was given to his daughter during

her life, and by operation of law, that gift passed the property to the husband. But even if the husband was trustee, and could pass the legal title, yet he could only pass such title as he held as trustee. Now, it is not pretended that his wife had more than a life estate in the slaves. At her death, they vested in her children, who thereupon had an immediate right to the possession of them. It appears from the pleadings that James F. Clendenin died before Lowe's wife; if so, his estate would be liable only for those slaves which were disposed of by him during his life-time, or which came to his administrator. Lowe had a right to sell the slaves for his wife's life-time, and during her life-time, Clendenin's possession was lawful. If Charity was run off after the death of Clendenin, before the assertion of an adverse claim to her by his representatives, his estate would not be liable for her value.

3. It is to be regretted that Clendenin's heirs did not bring an action at once on the warranty. The principle is not perceived on which they can claim the slaves in controversy, and ask at the same time, that, if their claim is defeated, then that they may recover on the warranty of title. That would not be a joinder of several causes of action. It is the setting up of one claim, and asking that, in the event it should turn out unfounded, then that another cause of action might be tried. Parties must ascertain the nature of their demands before they go to law. The will of Joab Barton, beyond all controversy, gave only a life estate in the slaves to Mrs. Lowe. At her death, they belonged to her children, and the only recourse of the plaintiffs, if they had any, was on the warranty made by Lowe to Clendenin.

4. Where the vendor is in possession of personal property, and sells it for full value, the law implies a warranty of title. Whether Lowe sold the slaves absolutely, or only his life estate in them, was a question to be determined by the evidence in the cause. Whether there would be a recovery on the warranty might, in part, depend on the result of the suit against Overton for the slaves sold to him, and, whether any thing had been done by

James Clendenin or his administrator, which rendered his estate liable for the value of the slave Charity. Certainly, if any of the slaves have been lost to Lowe's heirs, through the fault of Clendenin, it would constitute a counter claim to the demand of the plaintiffs for relief on the warranty. Morrison, by running off one of the slaves, on the termination of Clendenin's interest in her, would not subject his co-heirs to a claim for her value.

5. The practice now is, not to review the instructions given or refused when the cause is submitted to the court for trial. This court, in such cases, looks at the facts found, and if they warrant the judgment pronounced, that judgment will be affirmed, without regard to the instructions given or refused.

6. There is nothing in the objection, that the court refused to strike out a part of the defendants' answer. Even if there was, the point is not saved in such a way as that it can be noticed. The part objected to is designated by a reference to the paging of the original answer, which does not correspond with the paging of the record in this court.

There is nothing in the points about the admission or rejection of evidence which affects the judgment below, in our opinion. Upon the whole, we see no reason for disturbing the judgment of the court below on the merits of the case as presented. In order to avoid future difficulty, the judgment will be reversed, and a judgment entered dismissing the plaintiffs' action, without prejudice to a suit on the warranty, should they see proper to bring one, the appellants paying costs; Judge Ryland concurring.