————o————

JAMES A. HUSTON, Respondent, *vs.* FORSYTH SCALE WORKS, Appellant.

1. *Contracts—Action for breach of—Evidence not admissible to show a different breach from that set up.*—Where suit is brought for damages for a specified breach of contract, evidence of a different and additional breach is not admissible.

*Appeal from St. Louis Circuit Court.*

*Leverett Bell,* for Appellant.

*T. A. Russell,* for Respondent.

SHERWOOD, Judge, delivered the opinion of the court.

This action was for damages for a breach of an alleged contract of hiring, set out in the petition in the following words: "That on or about the 25th of September, 1871, plaintiff and defendant entered into a contract whereby it was stipulated by and between plaintiff and defendant, that plaintiff should serve defendant for one year from said date in the capacity of manager and superintendent of the business house of defendant, then just established in the city of St. Louis; and that in consideration thereof, the defendant agreed and promised to pay plaintiff the sum of two thousand dollars for said year's service." The breach stated was the discharge of plaintiff on November 30th, 1871, from the service of defendant; and damages for the breach were asked.

The answer denied that any contract for a year's service had been entered into between the parties; and alleged that about December 5th, 1871, plaintiff was discharged from defendant's service because he had become an habitual drunkard.

There was a reply denying the affirmative matter contained in the answer.

The plaintiff was the only witness examined upon the trial; and his testimony in full as preserved in the bill of exceptions was in the following words:

I am plaintiff in this cause. I was a member of the firm of Forsyth, Huston & Co., who sold out to the defendant. William Means was President, and Lewis was Superintendent of the Forsyth Scale Works, the defendant. They came here to buy out the business of Forsyth, Huston & Co., in the fall of 1871, about 16th to 18th of September. On the second day after they came, Means, the President wrote on a slip of paper and handed to me the following: "We would like a proposition from Mr. Huston for his services." Next day, Lewis said to Means: "Have Huston and you settled on a salary yet?" He said, "No!" I then said, "My price is $2,500 a year." This was about the 16th to the 18th of September. The next day Means and Lewis left for Cincinnati. The next I heard from this matter was about the 22d or 23d, when Mr. Clendenin came out as the book-keeper and financial agent of the house. He brought a letter from Mr. Means, which he handed to me. The letter was in words and figures as follows:

CINCINNATI, September 21, 1871.

JAMES A. HUSTON, ESQ., ST. LOUIS, MO.

Dear Sir: Mr. Lewis and I have signed the paper in accordance with the terms proposed, and Mr. Clendenin will close up the matter for us. I think Mr. C. should do as much office business as possible, and get familiar with that department, as a person of your experience should not be confined too much to the details of an office and books. Mr. Lewis and I have decided that we prefer you to wind up the business of F. H. & Co., and to continue in the management of the St. Louis house, but in consideration of our misfortunes and

present poverty, cannot afford to pay you over the rate of 2 M. per annum for your services. If Mr. Garrison and myself succeed in organizing a new concern at St. Louis as proposed, I hope to make you more favorable terms. With kind regards to Mrs. Huston, I remain Truly yours,

WILLIAM MEANS.

On receipt of this letter we began to take account of stock of old house, and turned it over to the new house, and on the 25th, the new house began, and on that day I began work as manager or superintendent of the new house under the contract as stated in the letter. Clendenin was book-keeper and managed the finances. I continued in the employ of defendant to December 5th, at which time I was discharged. Mr. Clendenin paid me. (Here plaintiff offered to prove that his salary was not paid in full up to the date of his discharge, to which proof defendant objected, and his objection was sustained, and thereupon plaintiff excepted.) I was discharged by a letter from the President, Mr. Means. Mr. Clendenin handed me the letter. I took a copy and handed it back to Mr. C., who kept it. (A copy of the letter was then read in evidence against defendant's objection, and an exception saved, which copy was in the following words):

CINCINNATI, November 29th, 1871.

C. A. CLENDENIN, ESQ., ST. LOUIS, MO. :

Dear Sir: I have a communication from Jas. A. Huston, declining my proposition to pay him at the rate of $1,000 per annum for employment by this company. His services thereafter, if any, would be consequently without any arrangement on our part, as his refusal to accede to our terms releases him from our employment. You will take charge in the absence of further instructions, and manage our affairs in St. Louis for the best interest of the company.

WILLIAM MEANS,
Pres't Forsyth Scale Works.

After December 5th, the date I was discharged, I made my appearance at the house every day till about the 20th of December. After that I took a trip to Kentucky. I moved to

Huston v. Forsyth Scale Works.

that State about the 20th of March, and on the 1st of April, 1872, went into business at $75 per month, and continued at it at that rate until now.

There was no other testimony in the case, whereupon, on defendant's motion, the court instructed the jury, that under the evidence, plaintiff was not entitled to recover.

Plaintiff duly excepted and suffered a non-suit with leave, etc., and moved to set the same aside. His motion was over-ruled, and he appealed to General Term, where the judgment was reversed, to which defendant duly excepted and appealed to this court.

There is not a particle of testimony in this case, to even remotely indicate, that plaintiff was employed, or his services engaged for the term of a year, or for any definite period. But on the contrary, the only tendency of the testimony adduced was to show that he was temporarily employed at the rate of $2,000 per year, and afterwards declined a proposition from the president of defendant to continue in such employ, at a lower figure, viz. : at the rate of $1,000 per annum.

The offer of plaintiff to prove that he had not been paid up to the date of his discharge, met with the fate it deserved. He had sued for damages for a certain breach of an alleged contract, and then desired to introduce evidence to show that an additional and unalleged breach had also been committed. The action of the trial court on both of the above mentioned points was clearly and unquestionably correct, and no labored argument is requisite to establish that proposition.

The judgment of the General Term is reversed and that of the Special Term is affirmed. Judge Wagner is absent; the other judges concur.