## CHARLES S. BRYANT

*vs.*

## EDWARD LIVERMORE, Guardian, &c., *et al.*

Chapter 77 of the General Statutes is to be read in connection with chapter 53 thereof, as one body of law relating to the same subject matter.

The debts, in respect of which an action is allowed by chapter 53 against the executor or administrator, heirs, devisees or legatees, are the same as the debts, the actions whereon are the subject of chapter 77.

Plaintiff's complaint alleges that D died intestate, and indebted to him in respect of claims, proper in their nature to be passed upon by commis-

sioners in the probate court; that there were no personal assets appli-
cable to the payment of such indebtedness; that he left real estate, which
has been inherited by his heirs, more than sufficient to pay them; that
the probate court appointed commissioners, who were partial, and inter-
ested in claims against the estate; that no inventory was returned; that
the commissioners returned no report till eighteen months after the ex-
piration of the time limited in the order appointing them; that they had
plaintiff's claims before them, and without notice of any return thereon,
and without proof, disallowed as illegal all but one of said claims; that
plaintiff was ignorant of said report till more than two years thereafter,
and when the administrator was discharged; that no part of said indebt-
edness has been paid; that no order of distribution to pay debts was ever
made, nor any appealable order, except the order appointing an adminis-
trator, and that no appealable order or judgment, nor the granting of no-
tice of any order, judgment or decree, in any way connected with the
proceedings in the probate court, has ever been served upon plaintiff,
and after due proceedings in the probate court, he is unable to collect
said claims from the personal representative of D, the next of kin, or any
legatee.   Held, That it states no cause of action against said heirs under
chapter 77, sections 13 and 14; nor does it state a cause of action, either
under said chapter 77 and chapter 53, or on general principles of equity,
against such heirs, to subject the said real estate in their hands to the
payment of said debts.

The guardian ad litem is not a party to the action, and the relationship
of a judge of the court, in which the action is pending, to such guardian,
does not disqualify him from sitting thereon.

This is an action against the heirs of William B. Dodd,
deceased, the defendant Livermore being the statutory guar-
dian, and guardian ad litem, of the minor heirs.

The complaint, (verified May 16th, 1870,) sets forth four
several causes of action, arising on contract, which accrued
to the plaintiff against William B. Dodd in his lifetime.  It
further alleges that Dodd died intestate August 23d, 1862;
that on the 19th September, 1862, his widow, Harriet N. Dodd,
was duly appointed administratrix of his estate, and letters of
administration were issued to her by the probate court of
Nicollet county; that there never were any personal assets

Bryant v. Livermore et al.

belonging to said estate, and no debts were ever paid, or could
be paid, out of any personal assets belonging to said estate;
and that, by reason of the total insolvency of personal estate,
his said claims became a just and proper charge upon any
real estate, inherited by or descended to any of the defen-
dants, heirs at law of said deceased; that on the 6th Septem-
ber, 1863, the said administratrix, Harriet N. Dodd, died,
without having returned the inventory required by law, or in
any way having administered said estate, and that on the 10th
September, 1863, her brother, Henry Jones, received from
said probate court letters of administration as administrator
*de bonis non*, and, as such administrator, returned no inventory
in said estate, but continued to act until the 27th January,
1867, when he was discharged by order of said probate court;
that commissioners were appointed to adjust the claims against
said estate, when in truth and in fact there were no personal
assets belonging to said estate, and when, by the law of the
land, all claims were barred as to said estate; that said com-
missioners, thus appointed, were partial, and interested in
claims against the estate to a large amount, and wholly
incompetent to serve, and that their proceedings were illegal,
irregular, unauthorized and void; yet said commissioners
continued and pretended to adjust claims against said estate
from September 24th, 1862, until June 24th, 1864, when their
time expired by limitation of the order of said probate court,
yet they neglected to return their report into the probate
court until December 22d, 1865, a period of eighteen months
after said office of commissioners expired; that said commis-
sioners, so acting without authority of law, had before them
the four several claims of the plaintiff, and did, in fraud of
plaintiff's rights, without notice of any action thereon, and
without proof, disallow as illegal all said claims, except a
claim for $118, which was allowed by them; that the commis-

sioners' report was unknown to the plaintiff until about the 27th January, 1867; that in their report the commissioners allowed claims against the estate to the amount of $7,644.53; that none of the plaintiff's said claims were ever paid, and that, in the absence of personal assets, the administrator could not pay any debts against said estate; that there now exists no administration on said estate; and that no order of distribution to pay debts was ever made in the said estate, nor any appealable order, letters of administration excepted, nor has any appealable order or judgment of any kind, the granting of any notice of any order, judgment or decree, in any way connected with the proceedings in said probate court in said estate, ever been served upon the plaintiff; and that all proceedings had in said estate in said probate court, except as herein, are irregular, illegal, erroneous in fact and fraudulent, and, as against the rights and equities of the plaintiff, utterly void.

The complaint further alleges that William B. Dodd died seized of certain described real estate in the s. e. ¼, sec. 16, town 110, range 26, in Nicollet county, of the value of about $50,000; that since the death of the widow, Harriet N. Dodd, on the 6th September, 1863, the said real estate has ceased to be occupied by the widow or either or any of the minor children of said William B.; and that said former homestead was, at the commencement of this action, and now is in the possession of strangers to said estate, and is not occupied by the widow or minor heirs of the said deceased; that after due proceedings before the said probate court, the plaintiff has been and still is unable to collect the said claims due him, or any part thereof, from the personal representatives of said William B. Dodd, or from any next of kin thereof, or any legatee, and that the same now are a just claim against the heirs of said Dodd to the amount of any real assets by them re-

Bryant v. Livermore et al.

ceived or inherited from the said ancestor, William B. Dodd, not exceeding plaintiff's claim, to-wit, $6,000 at the date of this action.

The prayer for judgment is, *first* that each of the plaintiff's claims may be held superior in equity to any claim of the defendants herein, heirs at law of said Dodd, to any real estate of which said Dodd died seized in said s. e. ¼ of sec. 16; *second*, that the plaintiff have judgment against said heirs, defendants herein, for the amounts due upon the several causes of action set forth in the complaint, to the extent of the value of any real property, inherited by or descended to them from said William B. Dodd, to the amount of plaintiff's claim, not exceeding the sum of $6,000 at the commencement of this action, and interest since that time; and that said judgment be, until paid, a lien on the real property of said defendants in said county and state, derived as aforesaid, superior to all other liens; *third*, that the defendants, their guardians and attorneys, be enjoined from making sales or transfers of any interest in said land, until the final hearing of the cause; *fourth*, for general relief.

The complaint was demurred to, as not stating facts sufficient to constitute a cause of action. The demurrer was sustained by an order of the district court for Nicollet county, from which order the plaintiff appeals.

The following opinion was filed January 30th, 1872. Immediately after it will be found two opinions of the court upon two successive motions for a re-argument of the case.

Swan & Bangs and Charles S. Bryant for Appellant.

Sumner Ladd for Respondents.

*By the Court.*—RIPLEY, CH. J.—Dodd's real estate descended at his death to his heirs, subject to his debts. *Pub. Stat. chap.* 37, *sec.* 1. The personal estate, however, was the primary fund for their payment. *Pub. Stat. chap.* 39, *sec.* 1.

The plaintiff contends that this complaint states a cause of action against the heirs under the statutes of this state, when it discloses a creditor, a debt, heirs, real estate inherited by them, and that the personal assets of the deceased were not sufficient to discharge the debt.

The statutory provisions upon which he relies read as follows : " Heirs and devisees are liable to an action by a creditor of a deceased person, to recover the debt, to the extent of the value of any real property inherited by, or devised to them." " But the heirs are not liable for the debt, unless it appears that the personal assets of the deceased were not sufficient to discharge it, or that, after due proceedings before the probate court, the creditor is unable to collect the debt from the personal representatives of the deceased, or from his next of kin or legatee ; " *Gen. Stat. chap.* 77, *secs.* 13, 14.

That is, in his view of it, whether the debt might have been so collected after due proceedings, or not, an action lies against the heirs, if the personal assets are insufficient to discharge it.

Such, indeed, is the literal meaning of these paragraphs, isolated from the rest of those branches of the statutes to which they belong. But chapter 77, aforesaid, must be read in connection with chapter 53, relating to the payment of debts and legacies, as one body of law relating to the same subject matter ; and it will then be seen that the debts, in respect of which an action is allowed, by chapter 53, against the executor or administrator, heir, devisee or legatee, are the same as those, the actions whereon are the subject of

chapter 77 : otherwise the statutes are inexplicably inconsistent with each other.

How, for instance, are we to reconcile the plaintiff's theory that he is at liberty to ignore the probate court, if there is an insufficiency of personal assets, with chapter 53, section 14, that every person whose claim is a proper one to be presented to the commissioners, and who shall not have exhibited it to them, as in that chapter prescribed, shall be forever barred from recovering such demand in any action whatever ? or with chapter 77, section 16, that no action is to be maintained against heirs, &c., unless brought within one year after the debt has been established ?

The plaintiff might as well say, that, under chapter 77, section 1, he might have sued the administrator immediately upon the issuance of letters, because there is not a syllable in chapter 77 to show, what is, nevertheless, upon a comparison of chapter 53, seen to be the fact, that such right may be cut off by the appointment of commissioners.    15 *Minn.* 159.

So, by section 7 of chapter 77, the next of kin are declared to be liable to an action by a creditor, to recover the distributive shares received by them, and there is no hint of any other limitation upon such right of action.   Are we to conclude, (as plaintiff would have us to do upon like general words in section 13,) that the district court has jurisdiction to entertain the action against the next of kin, upon showing that the next of kin have received their shares, and whether the creditor has proved his debt or not ?   This would be absurd, in view, not only of chapter 53, section 14, and chapter 77, section 16, already referred to, but, (not to mention other provisions,) of chapter 56, section 5, that no one is entitled to his share of the residue of the estate remaining *after payment* of the debts, allowances and charges, until they are paid *as provided for*, unless he gives bond to secure the

payment of his just proportion thereof, or of such part as shall remain unprovided for, and to indemnify the executor or administrator against the same.

Through the agency of the probate court, the real estate of the deceased, as to all the debts which are properly presented before the commissioners, may be surely and effectually applied to their payment; and such is the policy of the law.

In accordance with this policy, it is observable that the appointment of commissioners does not depend, and has never depended, upon the existence of personal property.

The *real*, as well as personal property must be inventoried. *Gen. Stat. chap.* 52, *sec.* 1; *Pub. Stat. chap.* 43, *sec.* 1. By the Public Statutes, as amended by Laws of 1862, chapter 24, commissioners are to be appointed, except when there are no debts, or the value of the *whole estate*, exclusive of the allowance to the widow, does not exceed $150, and shall be assigned for the support of the family, or where it does not exceed $200.00, as per inventory, in which latter case the judge performs their duties. The General Statutes, omitting this latter exception, adds that they need not be appointed where a man leaves children, but no wife, or a woman leaves children but no husband, and the property inventoried does not exceed $150.00, and the judge shall, as in his discretion he may, assign it all to such children.

It is impossible to see what rational motive the legislature could have in establishing a jurisdiction in the district court, to enforce the statutory personal liability against the heirs, &c., which the plaintiff supposes to exist by virtue of the provisions of chapter 77, above quoted, irrespective of any agency of the probate court.

Strictly speaking it would not be a *concurrent* jurisdiction over the same subject matter, since the probate court has no jurisdiction to enforce a *personal* liability against the heirs;

but the probate court can reach *the land,* in whose hands soever it may be, and subject it to the payment of all debts which may properly be proved before it; while in the district court the heir is personally liable, unless he shows that he has not sold the inventoried property before suit brought; but no property so sold in good faith can be reached. *Chap.* 27, *secs.* 27, 28.

That is to say, in the plaintiff's view of it, the legislature would have provided two independent modes of procedure, before different tribunals, to enforce the payment of the same debts, by one of which *all* the deceased's land could be applied in satisfaction, by the other, so much of it, only, as had not been sold before suit brought, as above mentioned. To state it, would.seem to be, in itself, a refutation of such a theory.

But that the understanding of the legislature, at the time of the revision, was, that these statutes should be read together, as one body of law relating to the same general subject, very clearly appears, we think, from the fact, that sections 53 to 58, inclusive, of chapter 44 of Public Statutes, where they are clearly seen to refer to the debts in respect of which an action was allowed by that chapter against heirs &c., appear in the revision, as sections 16 to 21, inclusive, of chapter 77, (which is otherwise identical with Pub. Stat. chap. 68,) instead of in chapter 53, (which is otherwise identical in substance with said chap. 44,) with a significant change, however, in the wording of said section 16.

Section 53 of chapter 44, aforesaid, reads : that when the heirs, &c., shall have received real or personal estate, and shall be liable for any debts as *mentioned in this chapter*, they shall be liable, &c.

There was of course no danger of misconstruction, while the section retained its place in that chapter; but if trans-

ferred without change to chapter 77, it might seem to coun-
tenance some such theory as the plaintiff's, and make the
heirs liable according to the literal meaning of sections 13 and
14, taken by themselves.

The legislature has made just the change in said section,
that it naturally would, if its intention was, that no such lia-
bility should, or should be supposed to exist; and, as section
16 of chapter 77, it reads, that when the heirs, &c., shall have
received real or personal estate, and are liable for any debts,
*" under the provisions of law,"* they shall be liable, &c., &c.

Reading chapter 53 and chapter 77 together, there is no
difficulty in giving a sensible construction to the sections re-
lied on by plaintiff, and one which will harmonize with the
other provisions of said statutes.

The debts referred to, being those mentioned in chapter 53
as those in respect of which an action is allowed, and placed
under the head of contingent claims, include also all claims,
when the appointment of commissioners has, for any cause,
been omitted. *Sec.* 49. This section 49, however, does not
operate to give a right of action, but to exclude the infer-
ence, which might possibly otherwise be drawn from other
provisions of said chapters, that the debt *must* have been pre-
sented to commissioners, so that, if none were appointed, it
could not be enforced at all. 15 *Minn.* 168.

Where none have been appointed, there can have been no
due proceedings in the probate court. The creditor may then
sue the administrator at once, ( 15 *Minn.* 168,) and if he can-
not collect the whole of his claim from him, because of the
deficiency of assets, the action lies for him for the balance,
against the heir, who has received real or personal estate,
bringing his action, however, within one year after he has
*established* his claim by the judgment in the suit against the
administrator. *Chap.* 77, *secs.* 13, 14, 15, 16.

Nor do we think that section 19, of chapter 77, militates against the construction, that such claim must first have been established. The debt therein spoken of, which any one, heir or devisee, who is *liable*, may dispute, is not the claim against the deceased, but the indebtedness, *under these statutes*, of such heir, &c. *He* may owe nothing, because, as an heir, for instance, one of the next of kin, or if he be a devisee, an heir, may be first liable, or there may have been assets in the administrator's hands; and the jury are to ascertain for *how much* of the creditor's claim such disputant is liable, not whether the deceased owed the *creditor*.

And though, as already remarked, the creditor, if the heirs were insolvent, would not be able to collect his debt out of any real estate, sold in good faith before suit brought, yet, as there is no reason to suppose, that, though an omission to appoint commissioners had occurred, the probate court would not in a proper case have cured it by an appointment, (15 *Minn.* 170,) the creditor would not be likely to forego that remedy, and resort to the district court, in any case in which the remedy therein would be less effectual.

If, however, commissioners were duly appointed, and the creditor proved his debt, in such case, on due proceedings had before the court, the creditor must have received his debt out of the personal property or the land; or, in case of the administrator's default, from him or his bondsmen.

But if it were a claim which did not accrue, or become absolute, till the time for payment of debts had expired, and no such proceedings had been had to ensure the retention of assets to pay it, as is provided by sections 43 and 44, of chapter 53, the creditor might, within a year, prove it before the probate court, and collect it from the executor or administrator, if he has assets, or of the next of kin, or legatee, in the

cases in which these several classes are respectively liable, and, in their default, of the heirs.

The due proceedings in the probate court are such, as will put the creditor in a position to demand and receive his debt of the executor, &c.

If it is said, that in case of a suit against the heir, such creditor, if the heir is insolvent, and has sold the land in good faith, will lose his debt, the answer is, that there seems no reason why, in any conceivable case of a contingent claim, he may not, if he sees fit, present his proof, as provided in section 43, and have assets retained to pay it, if the estate is solvent, or if insolvent, a dividend.

If he does not see fit to do so, it is but reasonable, that one who has purchased the land from the heir, in ignorance of such claim, should not be liable to lose it afterwards.

It will readily be seen, that, if our view of the law be correct, the plaintiff has not alleged facts sufficient to give him an action against Dodd's heirs, to enforce any liability under *Gen. Stat. chap.* 77. His claims against Dodd were proper to be presented to commissioners, and such were appointed. It is true that this was before the time for return of any inventory had expired, and that none was in fact ever returned; but the complaint alleges debts, and though there was no personal estate applicable to their payment, it shows that there was real estate more than sufficient to discharge them, and liable to be sold by the administrator therefor. There was then, in point of fact, occasion for their appointment, and if that appeared, whether upon the application for letters or otherwise, it could not be a valid objection to an appointment, that the court could not have been compelled to proceed to the discharge of that duty until an inventory had been duly returned. 15 *Minn.* 167.

But the complaint alleges that they were partial, and inter-

ested in claims against the estate, and wholly incompetent to serve, and that their proceedings were illegal, irregular, unauthorized and void. The statute requires them to be suitable persons. *Chap.* 53, *sec.* 1. If unsuitable,.for the reasons given, that would not authorize a creditor to ignore the probate court; for upon proof of such unfitness, it might, and presumably would, remove them and appoint others. For any failure in its duty in that behalf, the plaintiff would have a remedy. *Wood vs. Myrick,* 9 *Minn.* 149 ; 12 *Conn.* 139 ; 13 *Conn.* 221.

As the complaint specifies no other facts, as constituting unsuitableness, or why their proceedings were void, the assertions to that effect, above quoted, amount to nothing.

We have, then, commissioners duly appointed, to whom the plaintiff was bound to present his claims, or be forever barred. The complaint alleges, that they had said claims before them. If this is not an allegation that he presented them, there is an end of the case. Taking it, however, as a statement that he did present them, and that one only was allowed, we are not concerned with the reasons given, why the findings of the commissioners should be disregarded, although no appeal was taken therefrom.

When commissioners have been duly appointed, such claims as the plaintiff's must be enforced through the probate court. 15 *Minn.* 168. His claims were none of them such as, by chapter 53, can in such case, be enforced by action against the heir. Hence, the allegation in the complaint, that, after due proceedings before the probate court, he is unable to collect from the personal representatives, next of kin or legatee, is seen to be nugatory, the clause of the law which he quotes, having no reference whatever to such claims as his; and if it had, the complaint shows, moreover, on its face, that as to the

one claim established, this action is brought more than one year after it was allowed.

As to any general equity jurisdiction in the district court, to make Dodd's land applicable to the payment of these debts, subject to which by law it descended to his heirs, it is to be observed, that it does not follow at all that the district court has a concurrent jurisdiction with the probate court over the estates of deceased persons, because the court of chancery in England has such concurrent jurisdiction with the courts of common law, and the ecclesiastical courts.

Our constitution, (*art. 6, sec. 7,*) gives the probate court jurisdiction over such estates, and our statutes vest in it, and in the district court, on appeal, and in the other cases specified by law, the means of exercising that jurisdiction in those matters, in respect of which the court of chancery took jurisdiction. On this point, therefore, it is perhaps enough that equity will not interfere where there is a plain, adequate and complete remedy at law.

This rule is particularly applicable in cases in which, as in the present case, the statute at once gives the right and prescribes the remedy. At common law, the land in the hands of Dodd's heirs would not have been subject to these claims. The statute makes it liable for his simple contract debts. For debts of that class which, like plaintiff's were due and payable at Dodd's death, an easy and effectual mode of collection out of his real estate is provided through the probate court. If, through plaintiff's laches, that remedy is lost to him, he has only himself to blame.

We do not at present perceive in what case, or under what circumstances, due diligence would not result in the collection of such a claim out of the debtor's real estate applicable thereto; but, supposing such cases to exist, the plaintiff's case, as he states it, is certainly not one of them.

It is not alleged, and we cannot presume, that the fact which he now states, that the commissioners were interested, was not as well known to him when they were appointed, as it is now. If so, he waived any such objection by presenting his claims to them.

Again, it cannot be inferred from the complaint, that the commissioners did not give the notice required by law, of the times and places, when and where they would attend to discharge their duties. If so, it was plaintiff's duty to attend them with his proof. The commissioners were not required to notify him of the time at which they would proceed to pass upon his claims.

The law required the probate court to limit, in the commission, a time, within which creditors should present their claims. *Pub. Stat. chap.* 44, *sec.* 5. We must presume that it did so, and that it is to such a limitation that the allegation refers, that the commissioners' time expired, by limitation of the order of the probate court, on June 24, 1864, yet, that they neglected till December 22, 1865, to return their report, being eighteen months after their office expired; but if otherwise, as the law provides for no order, in any other way limiting their term of office, if such were made, it was ineffectual. They are to report as soon after the expiration of the time limited for claims to be presented, as they should have had time to complete the hearing of such claims. *Pub. Stat. chapter* 44, *sec.* 11.

Plaintiff does not allege that it was longer delayed. Certainly, the sixty days thereafter, allowed for an appeal, was ample time, wherein a diligent creditor could have ascertained the fact, and an appeal, seasonably taken, would, in the ordinary course of law, have established his claim against the estate before the date at which the administrator was discharged, or if not, he would not have been discharged, *pen-*

*dente lite*, without the appointment of another in his place, to defend the interests of the estate.

Upon the whole, whether upon general principles of equity, or the statutes of this state, the complaint states no facts which constitute a cause of action against these heirs.

The order sustaining the demurrer is therefore affirmed.

---

*By the Court.*—The motion for re-argument to which the following opinion relates, was argued at October term, 1872. The opinion was prepared by Chief Justice Ripley, and having been assented to by the other members of the court, was about to be filed some time before April term, 1873, when it came to the knowledge of the court, that the plaintiff was of the belief that the chief justice was disqualified from sitting in the case, by reason of his relationship to the guardian *ad litem* of defendants, and shortly after that plaintiff was desirous of making a second motion for re-argument, based upon the supposed disqualification. As the existence of the disqualification, (if any there was,) was as fatal to the authority of the chief justice to sit upon the hearing of the first motion for re-argument, as upon the hearing of the original appeal, it was thought prudent to defer filing the following opinion, at least until the second motion for re-argument, (if plaintiff should see fit to make the same,) was disposed of. On March 12th, 1874, plaintiff obtained an order for defendants to show cause why a second re-argument should not be had, and staying all proceedings in the case until the hearing and determination of the motion therefor. The order came on for hearing at the April term, 1874, before the court, as then and now constituted, and the re-argument, to which the same related, has just been denied. Chief Justice Ripley having in the meantime resigned, and Mr. Justice Young not having heard the

Bryant v. Livermore et al.

motion for the first re-argument, the determination thereof remained for his associates, by whom the following opinion, (prepared as above mentioned,) is now filed.

---

The appellant bases this motion for a re-argument, in the first place, upon the fact that the court, holding that chapter 77 of the General Statutes is to be read in connection with chapter 53, and that the debts, in respect of which an action is allowed by chapter 53, against the executor or administrator, heirs, devisees, or legatees, are the same as the debts, the actions whereon are the subject of chapter 77, misapplied the said statutes to the case, because the same were not in force at the time plaintiff's claims were in the hands of commissioners.

It is true, as he says, that chapters 44 and 68 of Public Statutes were then in force; but at the same time, the court holds that said chapters 53 and 77 of the General Statutes are identical with said chapters 44 and 68 of Public Statutes, except that sections 53 to 58 of said chapter 44 appear in the revision as sections 16 to 21 of chapter 77, with a change in the wording of section 16, to make it plain that no change in the law was intended by the transfer.

There was, of course, no danger of misconstruction, while the section, (*sec.* 53, *chap.* 44, *Pub. Stat.*,) retained its place in that chapter; but if transferred without change to chapter 77, it might seem to countenance some such theory as the plaintiff's, and make the heirs liable according to the literal meaning of sections 13 and 14, taken by themselves. The legislature has made just the change in said sections that it naturally would, if its intention was that no such liability should, or should be supposed to exist, and, as section 16 of chapter 77, it reads, that "when the heirs, &c., * * *

Bryant v. Livermore et al.

have received real or personal estate, and are liable for any debts under the provisions of law, they shall be liable, &c." It would seem that this makes it sufficiently clear that, in our judgment, the plaintiff had no right of action under the said chapters of the Public Statutes, and that the legislature, in the revision, had been careful to retain said chapters, without change in meaning, in which event the provision of chapter 121, section 9, of the General Statutes, applies, and chapters 53 and 77 aforesaid, are consequently to be considered as continuations of said chapters 44 and 68 of the Public Statutes, and not as new enactments.

It appears, however, that the plaintiff has, nevertheless, misunderstood us, and therefore complains, as above, that we have misapplied said General Statutes to his case. He says that the commissioners allowed one of his claims, (for $118,) and that we have construed the one year limitation in section 16 of chapter 77 to apply thereto, by holding the claims mentioned in said chapter to be the same as those, in respect of which an action is allowed by chapter 53, while such claim would not, as he contends, have been barred under chapter 44, because, as he says, such one year limitation was expressly limited by section 53 of said chapter 44, in one class of claims only, viz.: contingent claims.

So far as we can see, there is nothing in the wording of the opinion which should convey the idea, that we supposed that section 16 of chapter 77 had any reference to his said claim. That, like his other claims, was proper to be presented to the commissioners. It was so presented, and it was allowed. " When commissioners have been duly appointed, such claims as plaintiff's must be enforced through the probate court." 15 *Minn.* 168. " The debts referred to, (in chapter 77,) being those mentioned in chapter 53 as those in respect of which an action is allowed, and placed under the head of contingent

claims, include also all claims when the appointment of com-- missioners has for any cause been omitted. *Sec.* 49." " Where none have been appointed, there can have been no due proceedings in the probate court.   The creditor may then sue the administrator at once, ( 15 *Minn.* 168,) and if he cannot collect the whole of his claim from him, because of the deficiency of assets, the action lies for him for the balance against the heir, who has received real or personal estate, bringing his action, however, within one year after he has *established* his claim by the judgment in the suit against the administrator.   *Chap.* 77, *sccs.* 13, 14, 15, 16."

If the creditor's claim were a contingent claim, *i. e.* one " which did not accrue or become absolute till the time for payment of debts had expired, and no such proceedings had been had to insure the retention of assets to pay it, as is provided by sections 43 and 44 of chapter 53, the creditor might, within a year, prove it before the probate court, and. collect it of the executor or administrator, if he has assets, or of the next of kin or legatee, in the cases in which these several classes are respectively liable, and, in their default, of the heirs."

The above quoted paragraphs seem to make two things perfectly clear ; *first,* that said section 16 in no way refers to such claims as that of the plaintiff, *i. e.* claims proper to be presented, and which had been presented and passed upon by commissioners ; *second,* that the claims, which by said section must be allowed within one year, are contingent claims ; and those which must be established within one year, are claims against estates, in which no commissioners have been appointed, which must have been established by suit against the administrator within one year before suit brought against the heirs.

It would seem that upon due attention to the plain and literal meaning of said section 53 of said chapter 44 of the

Public Statutes, it is perfectly manifest, that the one year limitation, mentioned therein, applied to precisely the same class of cases.

The opinion holds, that " when commissioners have been duly appointed, such claims as the plaintiff's must be enforced through the probate court. ( 15 *Minn.* 168.)  His claims were none of them such as, by chapter 53, can in such case," (*i. e.* where commissioners have been appointed,) " be enforced by action against the heir," (*i. e.* they were not contingent claims.) " Hence, the allegation in the complaint, that after the proceedings before the probate court, he is unable to collect from the personal representatives, next of kin or legatee, is seen to be nugatory ; the clause of the law which he quotes," (section 14 aforesaid of chapter 77,) " having no reference whatever to such claims as his ; " (*i. e.* claims proper to be presented, and which had been presented to commissioners,) " and if it had, the complaint shows moreover on its face, that, as to the one claim established, this action is brought more than one year after it was allowed ;" *i. e.* as sections 14 and 16 both refer to the same classes of claims, if the plaintiff's claim had fallen within the former, it must necessarily have also fallen within the limitation of the latter.

If it was the above (altogether superfluous) clause beginning " and if it had," which led the plaintiff into the belief aforesaid, that we had applied said one year limitation to his case, we can but regret its insertion.

· The plaintiff has misunderstood the opinion in another particular. He quotes from it the sentence above quoted, beginning " the legislature has made just the change," &c., and then says, that " according to the view of the court in the decision above quoted, there may be a suit against heirs, according to chapter 53, where they have received real or personal estate, and *are liable for any debts* under the pro-

Bryant v. Livermore et al.

visions of law; and appellant supposes, that, under the pro-
visions of statute, heirs are liable when they have inherited
real estate from the decedent debtor, (*Pub. Stat. chap.* 68, *secs.*
17, 18 ; *Gen. Stat. chap.* 77, *secs.* 13, 14,) and a claim has been duly
allowed against the estate as a valid claim against the intes-
tate debtor. Can there be any doubt in this case ? " The
opinion had just before shown, that " the debts in respect of
which an action was allowed by chapter 53 against the heir,
were the same, the actions whereon are the subject of chapter
77." We had added, that so long as section 16 of chapter
77 retained (under the Public Statutes) its place as section 53
of chapter 44, there could be no danger that any other view
would be taken, because its operation is there expressly con-
fined to the debts mentioned in that chapter," (and which are
the same debts mentioned in chapter 53 aforesaid, of the Gen-
eral Statutes.) We then pointed out, that if, in revising the
statutes, the legislature, in transferring said section 53 to
said chapter 77 of the General Statutes, (as section 16,) had
made no change in its phraseology; that is, if it still read,
that the heirs should be " liable as mentioned in this chapter,"
it might give rise to the erroneous theory, upon which this
action is based, viz.: that heirs were liable according to the
*literal* meaning of sections 13 and 14; but that, by omitting
said words, and inserting in lieu thereof, " under the pro-
visions of law," the danger was obviated, since, under the
provisions of the law, as we construed it, reading chapter 53
and chapter 77 together, as one body of law, the heirs are
only liable in respect of contingent claims, and claims against
an estate upon which no commissioners have been appointed.

The plaintiff, however, by italicising the words, " *are liable
for any debts,*" and by reiterating his erroneous theory afore-
said, shows us, that as above stated, he has misapprehended
the opinion. This of course may have resulted from the un-

intentional obscurity of our language. If so, as the same cause might produce the same unfortunate effect generally, it is not to be regretted, that the plaintiff's motion has given us an opportunity for the present explanation, tedious though it may be.

This disposes of the original ground upon which this motion was based, and upon which, as set forth in plaintiff's affidavit, the order to show cause was granted.

At the argument, however, the plaintiff suggests, as a reason why a re-argument of this case should be had, that " the court intimated an opinion, that if due proceedings had been had before the probate court, all claims proper to be collected could have been collected through the administrator by the means under the control of the probate court, when the facts contradict the deductions of the court as we understand them." This suggestion, also, is founded upon a misconception of the meaning of the court. As so often already remarked, the plaintiff's claims were none of them such as, by chapter 53 of the General Statutes, could be enforced by action against the heir, and therefore we observed, that " the allegations in the complaint, that after due proceedings before the probate court he is unable to collect from the personal representative, next of kin, or legatee, is seen to be *nugatory,* the clause of the law which he quotes, (*Chap.* 77, *Sec.* 14,) having no reference whatever to such claims as his." We have heretofore explained our meaning in this observation at length. We now advert to it, to show that the plaintiff is in error in his supposition aforesaid as to what we intimated.

In proceeding to show, however, that upon general principles of equity, the complaint stated no cause of action, we adverted to the rule, that equity does not interfere, where there is a plain, adequate and complete remedy at law. We also remarked, in this connection, that for simple contract

Bryant v. Livermore et al.

debts of the intestate, which (like plaintiff's) were due and payable at his death, the statute provided a plain and effectual mode of collection, out of his real estate, through the probate court; that if, through plaintiff's laches, he had lost that remedy, he had but himself to blame. We added, in substance, that we did not then perceive in what case, or under what circumstances, due diligence would not result in the collection of such a claim, (*i. e.*, a simple contract debt, due and payable at the death of the intestate,) out of the debtor's real estate applicable thereto; but supposing such cases to exist, the plaintiff's, for reasons which we proceeded to state, was not one of them. This certainly amounts to an intimation, that by *due diligence* in the prosecution of his claims in the probate court, he might have collected them out of said real estate. To this intimation, if to anything in the opinion, we think the plaintiff must refer. If he does, we cannot see wherein the facts contradict our deduction. It would, of course, be no ground for re-argument, that they did, in his opinion. Aware of this, he suggests that the court has overlooked the fact, that the complaint states that the real estate was Dodd's homestead; that if so, it was exempt from sale by order of the probate court, " for the benefit of the widow and children under twenty-one years of age, a period of time either indefinite, or beyond the time administration in our state could exist." But the words of the statute are, " *during the time it shall be occupied by the widow or minor child,*" and we prefer to adhere to the law. Following the words of the law, and conceding that " a sale by license" is such a sale, on process issuing out of a court, as is meant in the homestead act, and granting that the complaint states that this was Dodd's homestead, and admitting, as would in such case be undeniable, that it could not be subjected to sale for Dodd's debts, so long as it was occupied by the widow or a minor

child, and granting also, that the complaint alleges that the widow and minor children did so occupy it, from Dodd's death in 1862, till the widow's death September 6th, 1863, it is, nevertheless, altogether immaterial, whether or not the court fell into the oversight suggested as aforesaid.

Our intimation aforesaid would still, in our judgment, be supported, not contradicted, by the facts; for the complaint alleges that Dodd died seized of this real estate, and, " that long since, viz., since the death of said Harriet N. Dodd, widow of said W. B. Dodd, September 6th, 1863, the said premises and real estate has ceased to be occupied by the widow, or either or any one of the minor children of the said W. B. Dodd, and plaintiff alleges that said former homestead was at the commencement of this action, and is now, in the possession of strangers to said estate of said Dodd, and is not occupied by the widow or minor heirs of said deceased." This is a plain and direct statement that neither the widow nor any minor child of Dodd has occupied this real estate since September 6th, 1863. Since that day, then, if never before, it has been as much liable to be sold by order of the probate court, to pay Dodd's debts, as any other lot of land, if any he has, in St. Peter or elsewhere.

At that date the commissioners were still in the discharge of their duties, and had plaintiff's claims before them. We were unable to see why, if plaintiff was aggrieved by the disallowance of all but one thereof, he might not, in the exercise of due diligence, have obtained, on appeal from their report to the district court, a reversal of their unjust decision, if unjust it were. We are equally unable to see why the administrator, who, as plaintiff says, is to be presumed to be willing to do his duty, would not, in that event, as he certainly might lawfully do, apply for and obtain a license to sell enough of said real estate to pay such debts. If he neglected or unrea-

sonably refused so to do, we are unable to see why the plaintiff might not have had his remedy therefor upon his bond, under *Pub. Stat. chap.* 45, *sec.* 8, or, if that should be thought not to afford an adequate remedy, by suit, under the provisions of said chap. 44, sec. 39 to 43 inclusive, (see *sec. 9, chap.* 45 aforesaid.) Such alleged oversight of this court, if it really occurred, is therefore no ground whereon to found a motion for a re-argument.

The plaintiff, however, further suggests that this being a homestead, neither the probate court nor administratrix had any power over it, to subject it to the payment of debts, at the time these commissioners were appointed, and as there was no personal property applicable to the payment of debts, such appointment was wholly void in law.

To repeat, for greater clearness, what we have already stated in the opinion, by the then law, when, that is to say, if, (15 *Minn.* 159,) letters shall be granted, it shall be the duty of the court to appoint commissioners, except, 1st, when there are no debts; 2nd, when the value of the whole estate, exclusive of the furniture and other personal property, allowed the widow, shall not exceed $150, and shall be assigned for the support of the widow and children, as provided by law, in which case such assignment shall be deemed a full and final administration and bar to all claims against the estate; 3d, when the estate of the deceased does not exceed $200, as per inventory returned by the administrator, in which case the judge is to perform the office of commissioners. As the complaint alleges that the administratrix died without returning an inventory, the case mentioned in the third paragraph did not arise in respect of this estate; nor does it appear by the complaint that the case mentioned in the second paragraph existed at the time these commissioners were appointed, viz., September, 1862, unless, as the plaintiff evidently imag-

ines, a homestead is not included in the words, *the whole estate,* as here used, and, (which does not appear from the complaint,) the other property was all assigned by the court for the family support.

If the *whole estate* includes a homestead, it was clearly the duty of the court to appoint these commissioners, even though these sixty-seven acres were a homestead.

We will concede, however, for the sake of the argument, that those words would not include this real estate, that the assignment aforesaid was in fact made, and that the appointment was therefore unauthorized. We will make the further admission, that in saying, as we do in the opinion, that " as the complaint alleges debts, and though there was no personal estate applicable to their payment, it shows that there was real estate more than sufficient to discharge them, and liable to be sold by the administrator therefor," and supposing, as before, that a homestead is exempt from sale by license, we must either have been of the opinion that the complaint did not allege facts sufficient to show that Dodd held said real estate as a homestead at the time of his death, or, that while it does allege such facts, we overlooked that circumstance. Nevertheless, unless an unauthorized appointment is synonymous, within the meaning of the statute, with an omission to appoint, the plaintiff is in no way concerned with all or any of these matters ; for, to repeat ourselves once more, however insolvent this estate, however impossible, by any proceedings which could be had before the probate court, it might have been for him to collect his debt from the personal representatives, &c., (*chap.* 68, *Pub. Stat. sec.* 18 ; *chap.* 77, *Gen. Stat. sec.* 14,) plaintiff's claims in no way concerned the heirs, unless they were contingent claims, or claims against an estate in which the appointment of commissioners had been omitted.

But to prevent further misapprehension, let us suppose that

Bryant v. Livermore et al.

such an unauthorized appointment, as is supposed, is tantamount, in legal meaning and effect, to an omission to appoint. The plaintiff's complaint is still as far as ever from giving him any cause of action, under the statute, against these heirs. His cause of action survived against the administratrix. The heirs are liable, only, each for his or her proportion of such debt, as he might establish in a suit against the personal representative, and then only in case his action against the heirs was brought within one year after he had thus established his claim, (See 15 *Minn.* 159 ; *Pub. Stat. chap.* 44, *sec.* 53, *et. seq. ; chap.* 68, *secs.* 2, 17, 18, and corresponding chapters and sections of General Statutes, and the opinion in this case.) But in the case supposed, the plaintiff could never have established any claim against the personal representative, for, by the statute then in force aforesaid, said assignment, in the case therein contemplated, and which for the sake of the argument we have supposed to be the plaintiff's case, shall be deemed a full and final administration and bar to all claims against the estate. The heirs being only liable, each for his or her proportion of such debt as he might establish in a suit against the personal representatives, as the assignment would prevent his establishing any such, it follows that the heirs would never come under any liability to him.

It will, of course, be understood that in thus showing that the plaintiff has assigned no sufficient reason for a re-argument, we do not mean in any way to intimate that we concur in any of the plaintiff's positions, which, for the sake of the argument, we have conceded to be well taken. Whether a homestead is part of the estate of the deceased, of which the administrator is to return an inventory ; whether, if there be a homestead, and no other property not assignable for the support of the family, the probate court should appoint commissioners ; whether, if the next month or year, or at any

other time thereafter, the widow and minor children should abandon such homestead, the court could then appoint them; whether the law prohibits the sale of a homestead under license from the probate court; whether in such case, if there were no property but a homestead, and, as might be the case under the law, that should continue to be exempt for twenty-one years from the day of the death of the intestate, the probate court could thereafter appoint commissioners, if none had been appointed before, and sell the estate then, to pay the debts allowed, are all questions, interesting indeed, but which, as we think will be evident, do not arise in this case.

Motion denied.

---

*By the Court.*—BERRY, J.—This cause came into this court upon appeal from an order sustaining a demurrer to the complaint, and was argued upon its merits at the July term, 1871. January 30th, 1872, this court filed an opinion, in accordance with which the order appealed from was affirmed. February 24th, 1872, the plaintiff obtained an order, requiring defendants to show cause why a re-argument should not be had, and staying all proceedings until the application for the re-argument was disposed of. The motion for this re-argument was based upon alleged errors, appearing in the above mentioned opinion, in the construction and application of certain provisions of statute, to plaintiff's prejudice. The motion was heard at the October term, 1872. March 12th, 1874, the plaintiff obtained an order, requiring defendants to show cause why a re-argument should not be had, and staying proceedings as before. This motion was based upon a claim, that the aforementioned decision upon the merits was irregular and void, by reason of the disqualification of the then chief justice to sit in the cause. The disqualification was claimed

to follow from the relationship of the chief justice to Edward Livermore, (the guardian *ad litem* of the infant defendants,) they being descendants of a common great grandfather, and therefore related within the sixth degree. The second motion for re-argument was heard June 11th, 1874. The fact of the relationship was known to the plaintiff at and before the argument of the first motion for re-argument; but though the plaintiff, (an attorney and counsellor of this court,) was present during such argument, he suffered the same to be made without any objection, and without bringing the matter of relationship to the attention of the court. The existence of the relationship was not known to the chief justice, or to any member of the court, until some months after the hearing of the first motion for re-argument, at the October term, 1872. These facts as to knowledge on the part of the chief justice, and the other members of the court, and on the part of the plaintiff, are perhaps not important here, except as showing that this is not a case in which the plaintiff is entitled to any favor or indulgence, but a case in which a proper respect for its own dignity should restrain the court from allowing the second re-argument upon any other ground than the plaintiff's clear right to the same, as a matter of strict law.

The following provisions of statute are relied upon by the plaintiff: "No judge of any of the courts of record of this state shall sit in any cause   *   *   *   in which he would be excluded from sitting as a juror." (*Gen. Stat. chap.* 64, *sec.* 4.) In civil actions, "the challenges are to the panel and to individual jurors, as in criminal actions, &c." (*Gen. Stat. chap.* 66, *sec.* 208.) In criminal actions, "a challenge for implied bias may be taken for all or any of the following causes, and for no other: First, consanguinity or affinity, within the ninth degree, to the person alleged to be injured by the offense charged, on whose complaint the prosecution was instituted,

or to the defendant." (*Gen. Stat. chap.* 116, *sec.* 19.) Seven other causes of challenge for implied bias are specified in said section, but none of them are important to be considered in this case.

The plaintiff's contention is, that under these provisions of statute, the consanguinity of the chief justice to Livermore disqualified him from sitting in this cause. We will not now stay to consider the obvious difficulties of applying this language of the statute in reference to a challenge for consanguinity or affinity to *civil* actions, but we will assume, that by a proper construction of the foregoing provisions of statute, the designated consanguinity or affinity of a judge of a court of record to any of the parties to a civil action, whether plaintiff or defendant, disqualifies him from sitting therein. But as it is consanguinity to a *party* to the action, which disqualifies, the important question is, whether the guardian *ad litem* of an infant defendant is such party? That he is not a party, is distinctly held in *Dahoney vs. Hall*, 20 *Ind.* 267 ; and in *McDonald vs. McDonald*, 24 *Ind.* 68.

We can conceive of no reason why he should be considered a party, any more than should the *prochein ami* of an infant plaintiff, of whom it is said in *Sinclair vs. Sinclair*, 13 *M. & W.* 646, by Pollock, C. B., (citing *Morgan vs. Thorne*, 7 *M. & W.* 400,) that " he is not a party, but is merely to be considered an officer of the court, specially appointed by them to look after the interests of the infant." In the same case it is further said by Parke, B. : " I think the parties to the suit are the plaintiff and defendant, and that a *prochein ami* is not a party to the suit, but simply a person appointed by the court to look after the interests of the infant, and manage the suit for him. He is different, no doubt, from the attorney, because he has a control over the suit, and is liable to the costs." Rolfe,

B. adds : " I go upon the short ground that I do not think the *prochein ami* is a party to the suit."

So in *Morgan vs. Thorne, supra,* Alderson, B. says, " Where a party cannot sue for himself, the court employs a *prochein ami,* as its officer to conduct the suit for him. * * It is in fact almost the same thing as appointing an attorney ; the law, if we may so speak, appoints an attorney to act on behalf of the infant." To the same effect, *Melhuish vs. Collier,* 15 Q. B. 878. So in *Anon.* 2 *Hill,* 417, Cowen J., held, that the next friend of an infant plaintiff " was not a party, but rather in the nature of an attorney." *Brown vs. Hull,* 16 *Vt.* 673, determines, (in the words of the head-note,) that " when an infant commences an action in the name of his next friend, the person so named as next friend is not regarded, for any purpose, as a party to the suit." *Smith vs. Floyd,* 1 *Pick.* 275 ; *Crandall vs. Slaid,* 11 *Met.* 288 ; *Isaacs vs. Boyd,* 5 *Porter,* (*Ala.*) 391 ; *Tyler on Infancy and Coverture, sec.* 132 ; 2 *Taylor on Evidence,* § 1498, are authorities in the same direction. In this state the *guardian,* (a term used to include both *prochein ami* and guardian *ad litem,*) by whom an infant is required to appear in an action, is, by statute, to be appointed by *the court,* or by a *judge* thereof, the effect being, that as at common law, he is *appointed* or *employed* by *the court,* as its officer, " to look after the interests of the infant and manage the suit for him." See also *Bank U. S. vs. Ritchie,* 8 *Peters,* 144.

If there is any distinction between a *prochein ami* and a guardian *ad litem,* so far as the question under consideration is concerned, it is in favor of the guardian *ad litem ;* for while there is some difference in the practice upon this point, the rule has extensively prevailed, that the next friend of an infant plaintiff is responsible for the costs of suit, while in the case of the guardian *ad litem* of an infant defendant, the responsibility for costs is upon the infant, not upon the guard-

ian. (*Tyler on Infancy and Coverture, secs.* 142, 143.) Possibly this distinction may have regard to the fact, that an infant plaintiff comes into court upon his own motion, while an infant defendant is *forced* into court. Our statute preserves the distinction, providing that, " When costs are adjudged against an infant plaintiff, the guardian, by whom he appears in the action, is responsible for him," but making no similar provision, where costs are adjudged against an infant defendant.

It is urged, that the guardian *ad litem* is a party in interest in the suit, because he is responsible for the conduct of the same to the infant defendants whom he represents. If he neglects his duty, to the prejudice of the infants, he is liable. (*Bacon's Abr. Infancy, K.* 2 ; *Knickerbacker vs. De Freest,* 2 *Paige,* 304.) This would only go to show that he was interested, not in the suit, that is to say in the subject of the suit, but that he was liable for misconducting it. But an attorney may be liable for misconducting a suit, yet he is not interested in it; neither would a judge be disqualified from sitting in a cause by the nearest degree of relationship to the attorney in charge of the same.

For these reasons, we are of opinion that the supposed disqualification is unfounded, and the motion for re-argument, upon the ground of disqualification, is accordingly denied.