DENNIS BOYLE v. MUSSER–SAUNTRY LAND, LOGGING &
MANUFACTURING COMPANY.

June 30, 1899.

Nos. 11,674—(200).

### Contract—Banking Logs—Scale of Surveyor General Conclusive—Exception.

This is an action to recover a balance alleged to be due upon a contract
for cutting and banking logs. The contract provided that the surveyor
general's scale of the logs should be final and conclusive. *Held*, that such
scale is conclusive upon the parties as to the amount of logs cut and
banked by the plaintiff, unless it was fraudulent, or grossly inaccurate,
or the defendant by its wrongful act or neglect prevented a scale of all
the logs being made.

### Same—Impeachment of Scale.

*Held*, further, that certain evidence offered for the purpose of impeaching the surveyor general's scale was correctly rejected by the trial court.

Action in the district court for Washington county to recover
$7,038.10 for cutting and banking logs. The case was tried before
Williston, J., who found in favor of defendant; and from an order
denying a motion for a new trial, plaintiff appealed. Affirmed.

*J. N. Searles*, for appellant.

*Clapp & Macartney*, for respondent.

START, C. J.

This is an action by the plaintiff to recover an alleged balance
due him for cutting and banking logs during the seasons of 1892–
93 to 1896–97, inclusive, pursuant to a written contract. The
cause was tried by the court without a jury, and resulted in findings of fact and conclusions of law in favor of the defendant. The
plaintiff appealed from an order denying his motion for a new trial.

The contract was made November 20, 1889, between the defendant and David C. Gaslin, and on September 4, 1891, the latter, with
the consent of the defendant, assigned his right and interest in the
contract to the plaintiff, who, for convenience, may be here treated
as if one of the original parties thereto. The contract provided for
the scaling of all logs, as fast as banked, by a competent scaler, to

be agreed upon by the parties, and they were so scaled.   The plaintiff was to receive $3 per 1,000 feet for all logs cut, hauled, and landed on the Tamarac river, and $3.50 per 1,000 feet on the main St. Croix river, payment thereof to be made as follows:

"One-third of the whole amount due for cutting, banking, or delivering any of said logs, on the first day of April of each year after such logs have been so cut, banked, and delivered; one-third of such amount on the first day of June next thereafter; and the remaining one-third on the next succeeding first day of September.   And it is hereby mutually agreed as follows:   That the above payments shall be made according to the landing scale of said logs, provided the landing scale shall be considered final; but, in case the landing scale is not final, the first and second payments shall be made according to the landing scale; but the third and last payment shall be due and payable when the final scale is made by the surveyor general, as hereinbefore provided, and any differences that may be shown by such rescale shall be adjusted when the last payment is made each year."

The contract also contained this provision:

"It is hereby mutually agreed between the parties hereto that should the first-named party be dissatisfied with the landing scale of said logs, and serve a written notice of such dissatisfaction on the parties of the second part prior to the first day of April in each year after said logs are scaled, then, and in that case, the landing scale of said logs shall not be considered final and conclusive between the parties hereto, but a rescale of all of said logs shall be made in Lake St. Croix by the surveyor general of logs and lumber for the first lumber district of the state of Minnesota, which rescale shall be final and conclusive between the parties hereto, and the expense of such rescale shall be borne equally between the parties hereto."

There is no controversy between the parties as to the logs cut and banked under the contract prior to the season of 1892–93.   The parties have fully settled for such logs according to the landing scale. But in the spring of 1893, and each year thereafter, the plaintiff served notice upon the defendant that he was dissatisfied with the landing scale, and requested that the final settlement be made on the basis of the surveyor general's scale in Lake St. Croix, as provided by the contract.   It is not claimed by the plaintiff that he has not been paid according to the contract for all logs cut and

banked during the seasons of 1892–93 to 1896–97, inclusive, so far as they have been scaled by the surveyor general. He claims, however, that he cut and banked 2,084,469 feet in excess of the amount shown by the scale of the surveyor general during the years in controversy, and to recover the contract price for this alleged shortage this action was brought.

The assignments of error relate to the rulings of the trial court in excluding evidence offered by the plaintiff tending, as he asserts, to establish this claim. The correctness of the court's rulings must be determined by the contract of the parties. The plaintiff's construction of the contract is that the surveyor general's scale is conclusive evidence of the number and quantity of only such logs as were scaled by him, and not evidence that there were no other logs landed by the plaintiff than those scaled by him.

Such a construction of the contract is not justified either by its letter or spirit, for the parties carefully stipulated for only two methods for ascertaining the amount of logs cut and banked by the plaintiff. One was the landing scale; the other was the surveyor general's scale to be made in Lake St. Croix; and, in either case, the scale was to be conclusive. After the plaintiff elected to have the logs scaled by the surveyor general, the only use to be made of the landing scale was to determine tentatively the amount of the first and second payments to be made on the contract, to be finally adjusted on the last payment to be made each year on the surveyor general's final scale, and to ascertain the proportion of the logs delivered at each landing. The plaintiff, by his election, assumed, to the extent of his compensation therefor, the loss of all logs incident to the driving of them to the lake in the usual way. We therefore hold that, by virtue of the contract of the parties, the scale of the surveyor general is conclusive upon them as to the amount of logs cut and banked by the plaintiff under this contract, unless it was fraudulent or grossly inaccurate, or the defendant, by its wrongful act or neglect, prevented a scale of all of the logs being made. Johnson v. Howard, 20 Minn. 322 (370); Leighton v. Grant, 20 Minn. 298 (345); Jesmer v. Rines, 37 Minn. 477, 35 N. W. 180.

The burden was on the plaintiff so to impeach the surveyor gen-

eral's scale by competent evidence.  The plaintiff for this purpose offered the landing scales, but they were excluded by the court, on the defendant's objection.  The court also sustained an objection to a question put to the plaintiff by his counsel to the effect whether, if there were any logs banked under the contract which, as claimed, were not included in the surveyor general's scales, they were of the same average size and quality as the logs included in such scale.  These rulings are assigned as error.

The surveyor general's scale was received in evidence without objection.  There was neither evidence, nor offer of evidence, to show that the defendant did not drive all the logs cut and banked by the plaintiff into Lake St. Croix, where they were to be scaled by the surveyor general, but, on the contrary, the complaint expressly alleged that all logs so cut and banked came through and down into the lake about July 1, 1898.  The purpose for which the evidence rejected by the court was offered, while not directly stated in the record, is perfectly manifest.  The plaintiff sought to show by the landing scale only the number of logs cut, rejecting the measurement as shown by such scale, and to use the surveyor general's scale only for the purpose of ascertaining, in connection with the proposed oral evidence, the average number of feet in each log; then, by multiplying this average by the number of logs shown by the landing scale, the product would be the number of feet claimed to have been banked by him.  If there had been any competent evidence in the case to impeach the surveyor general's scale, and to establish with any degree of certainty the number of logs actually banked and omitted from the official scale, if any, we are not prepared to say that the oral evidence offered was not competent.  But the landing scale, which the plaintiff himself had discredited and rejected, was not competent evidence to impeach the surveyor general's scale, which he had stipulated should be conclusive and final, both as to the number of logs and the number of feet therein.  To hold otherwise would simply result in substituting the landing scale for the surveyor general's scale, contrary to the express contract of the parties.  The ruling of the court in excluding the evidence was correct.

77 M.—14

The plaintiff testified that the logs accumulated in the lake some length of time before they were scaled, some of them for two and three years; also that logs lying in the water lose their bark. He was then asked these questions:

"Would that fact injure the log, and reduce the quality of merchantable timber that would be found in it when it was scaled?"

"Does the log lose its mark sometimes when it loses its bark?"

An answer to these questions was promptly excluded by the court on the objection of the defendant. There was no evidence that the plaintiff ever requested that the logs should be scaled earlier than they were, or that the delay was due to the act or neglect of the defendant. Besides, the proposed evidence was too indefinite and uncertain to furnish a basis for rejecting the official scale.

The remaining assignments of error have been considered, but we do not deem it necessary to refer to them specifically, for they are clearly without merit. If all the evidence offered by the plaintiff, and rejected by the court, had been received, it would not have justified the conclusion that the surveyor general's scale was fraudulent, or grossly inaccurate, or that defendant, by any wrongful act or neglect on its part, prevented a scale of all of the logs cut and banked by the plaintiff which land into the lake where they were to be scaled.

Order affirmed.