RAMING, by Next Friend, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

157 477
93a 4 61

### In Banc, June 30, 1900.

1. **Pleading:** PLAINTIFF'S INTENTION TO BECOME A PASSENGER. An allegation in a petition against a street railway company for injuries, that plaintiff boarded a car with the intention of becoming a passenger, is not equivalent to an allegation that he was a passenger, since the law does not concern itself with mere intent not evidenced by an outward act.

2. **Newsboy:** NOT A PASSENGER ON STREET CAR. A newsboy who jumps on a street car without signaling it to stop, for the purpose of selling papers, and jumping off again, is not a passenger, so as to charge the company with special care to avoid injuring him, though he intended to pay fare if the conductor asked him; it appearing that the conductor did not see him, and that the gripman, who had no authority to grant or refuse him permission to ride, tried to eject him.

3. ———: PASSENGER: ALLEGATIONS: PROOF. Where a petition against a street railway company for injuring a newsboy alleged that the gripman pushed plaintiff from the car, and the evidence showed that the gripman first shoved at him with a broom, and then struck at him with his hand, in neither case touching him, and that plaintiff fell from the car in dodging the threatened blow, such evidence does not correspond with the allegation, and it was error to overrule a demurrer thereto.

4. ———: ASSAULT BY GRIPMAN: NEGLIGENCE: DEMURRER. A petition against a street railway company for injuries, which alleged the gripman's willful pushing of plaintiff from a moving car as constituting negligence, was bad for duplicity, since the same act could not be both negligent and willful, and, the allegation being so contradictory that the testimony in support of it was necessarily equally contradictory, it was error to overrule a demurrer to such evidence. (VALLIANT and BRACE, JJ., dissenting, in separate opinion by VALLIANT, J.)

5. **Passenger:** FOOT-BOARD: CONTRIBUTORY NEGLIGENCE.   In an action against a street railway company for injuries, it is error to instruct that, if plaintiff was riding on the foot-board of a grip car while it was running at its usual speed, he was guilty of contributory negligence unless he was a passenger, since his status as a passenger could not affect the question of his negligence.

6. **Newsboy:** ASSAULT BY GRIPMAN: SCOPE OF EMPLOYMENT: PROOF. Where plaintiff, a newsboy, sued a street railway company for injuries caused by a gripman's endeavoring to push him from the car on which he had jumped to sell papers, whereupon he dodged, and in doing so fell from the car and was injured, it was incumbent on plaintiff to allege and prove that the gripman's acts were within the scope of his duties, plaintiff not being a passenger, and, in the absence of such allegation and proof, plaintiff could not recover.

7. **Theory of Trial:** CHANGING FRONT.   Where an action against a street railway company for injuries is tried and submitted in the lower court on the theory that plaintiff was ·a passenger, it is too late on appeal to attempt to justify plaintiff's recovery on the theory that he was not a passenger.

#### PER VALLIANT, J., IN SEPARATE OPINION.

1. **Change of Venue:** APPLICATION: DILIGENCE: KNOWLEDGE OF FACTS. Where plaintiff sues in the only court available to him, and on the third day of the term at which summons is returnable defendant moves to require plaintiff to give security for costs, and on plaintiff's being permitted to sue as a poor person moves for a stay of proceedings until the costs in a previous suit for the same cause are paid, and plaintiff's application for a change of venue is made pending the determination of the latter motion, such facts show reasonable diligence in plaintiff in making his application for the change, the first motion having the effect of arresting the action, and it is immaterial that plaintiff knew of the facts relied on for the change before he instituted his suit. (SHERWOOD and MARSHALL, JJ., dissenting, in separate opinion by SHERWOOD, J.)

2. ———: APPLICATION BY NEXT FRIEND.   Section 2261, Revised Statutes 1889, requiring an application for a change of venue to be made by the party in his own person, and not by an agent or attorney, such application may be made by the next friend of the infant plaintiff, since the next friend derives his authority, not from the infant, but from the court appointing him.   (SHERWOOD and MARSHALL, JJ., dissenting, in separate opinion by SHERWOOD, J.)

3. ———: APPLICATION: PREJUDICE OF INHABITANTS TO NEXT FRIEND. An application for a change of venue made by the next friend of an infant plaintiff, on the ground that defendant has an undue influence over the inhabitants of the county in which suit is brought, in which the next friend represents that he, instead of the infant, can not have a fair trial, is not objectionable as contravening R. S. 1889, section 2261, requiring the application to be made by the party; it being apparent from the application that it is the infant who can not have a fair trial.

Appeal from Johnson Circuit Court.—*Hon. W. W. Wood,* Judge.

REVERSED AND REMANDED.

*Pratt, Dana & Black* and *Frank Hagerman* for appellant.

(1) The Jackson Circuit Court erred in changing the venue, and the Johnson Circuit Court erred in refusing to remand. (a) Questions arising upon an application for change of venue may be presented when the matter, as here, was preserved by bill of exceptions in the original court. Stearns v. Railroad, 94 Mo. 317; Squires v. Chillicothe, 89 Mo. 232. Or by motion to remand interposed in the court to which the cause was removed. State ex rel. v. Bacon, 107 Mo. 634. (b) The application in this case proceeded upon the erroneous idea that the next friend was the plaintiff and did not purport to be an application on behalf of the real plaintiff. (c) The affidavit was not made by the party. Levin v. Dille, 17 Mo. 64; Huthsing v. Maus, 36 Mo. 101; Norvell v. Porter, 62 Mo. 309; Squires v. Chillicothe, 89 Mo. 232; In re Whitson, 89 Mo. 58; Jaffray v. Claflin Co., 119 Mo. 117. (d) The next friend was not the real plaintiff. Tate v. Mott, 96 N. C. 19; Brown v. Hull, 16 Vt. 673; Anon., 2 Hill (N. Y.) 417; Bartlett v. Batts, 14 Ga. 539; Sinclair v. Sinclair, 13 M. & W. 640. (e) The averment as to the time when the party became possessed of a knowl-

edge for a cause for change of venue was too indefinite and uncertain (R. S. 1889, sec. 2261), and in any event there was not prompt action in this respect. (2) There was error in refusing to sustain a demurrer to the testimony and to give a direction for defendant upon the first count at the close of all the testimony. (a) Plaintiff was not a passenger, Schepers v. Railroad, 126 Mo. 665; Schaefer v. Railroad, 128 Mo. 71; Blackmore v. Railroad, 38 Up. Can., Q. B., 117; Fleming v. Railroad, 1 Abbott's New Cases (N. Y.) 433; Duff v. Railroad, 91 Pa. St. 458. (b) Not being a passenger, the question of defendant's liability must depend upon whether the acts of the gripman were within the scope of his duties (Farber v. Railroad, 116 Mo. 81), and the testimony was entirely silent as to what the duties of the gripman were, other than that he was a mere operative of a train who might be likened to a brakeman or engineer upon a steam railroad. (c) Plaintiff can not state one case in his petition and recover upon another. Waldhier v. Railroad, 71 Mo. 514; Hite v. Railroad, 130 Mo. 132; McManamee v. Railroad 135 Mo. 440. The petition charged that plaintiff was a passenger and the proof showed to the contrary. The petition charged that the gripman actually pushed plaintiff from the car where he was by the consent of defendant's servants, whereas the proof was directly to the contrary. Plaintiff could not say in his petition that he was a passenger with the consent of the trainmen and that the gripman actually shoved him off and then recover upon proof that he was not a passenger, not on the car with the gripman's consent, and that he fell from the car in dodging the gripman from taking hold of his hat or coat. Logan v. Railroad, 77 Mo. 663; Blackmore v. Railroad, 38 Up. Can., Q. B., 217. The proof shows, if anything, a willful act, and this does not authorize a recovery upon a petition counting upon negligence. Bindbeutal v. Railroad, 43 Mo. App. 470; Railroad v. Smith, 98 Ind. 42.

*Botsford, Deatherage & Young, O. L. Houts,* and *W. J. Hollis* for respondent.

(1) Plaintiff was a passenger. The fact that plaintiff, for a considerable time without ever being warned or forbidden so to do by appellant or its employees or any of them, had been by them permitted or suffered habitually to ride on its cars for the purpose of selling newspapers to its regular passengers, and at the time of his injury he had ridden two full blocks on appellant's cars while so selling or attempting to sell his papers, made him a licensed passenger without fare, with appellant's consent. 2 Am. and Eng. Ency. of Law, 739; Com. v. C. R., 108 Mass. 7; Yeomans v. C. C. S. N. Co., 44 Cal. 71; Jones v. Railroad, 125 Mo. 670, 675; Magoffin v. Railroad, 102 Mo. 540; Mellor v. Railroad, 105 Mo. 455; Railroad v. Moore, 10 S. E. Rep. 730; Muelhausen v. Railroad, 91 Mo. 332; Wilton v. Railroad, 107 Mass. 108; Whitehead v. Railroad, 99 Mo. 264; Buck v. Railroad, 46 Mo. App. 556; Murphey v. Railroad, 43 Mo. App. 346; Bank v. Railroad, 108 Mo. 185; Wharton on Neg., secs. 354 to 356 and 501; Lemon v. Chanslor, 68 Mo. 341; Hutchinson on Carriers, secs. 537, 539, 563, 564 and 565; Railroad v. Derby, 14 How. 468; Barre v. Railroad, 26 Atl. Rep. 99; Austeth v. Railroad, 145 N. Y. 210; N. J. Traction Co. v. Daubech, 31 Atl. Rep. 1038; Blackmore v. Street Railway, 38 Up. Can. Q. B. 172; Fleming v. Railroad, 1 Abbotts N. Cas. 433; Duff v. Railroad, 91 Pa. St. 458. Appellant went to the jury on the theory plaintiff was a passenger. He can not change his theory in this court. The authorities supporting this proposition are too numerous to require citation. (2) Verdict of the jury was conclusive and right. The verdict of the jury on the question of fact whether plaintiff was expelled from the car by the gripman, or whether he fell

between the cars, having been approved by the trial judge, is conclusive of the fact found. Apart, however, from that view, the finding of the fact of expulsion as the cause of the loss of plaintiff's leg, is abundantly supported by the evidence. In either view, this court, sitting as a court of errors, will not interfere to review the finding of the jury. Eidemiller v. Kump, 61 Mo. 340; Grove v. Kansas City, 75 Mo. 672; Bank v. Wood, 124 Mo. 72; Henry v. Railroad, 119 Mo. 492; 16 Am. and Eng. Ency. of Law, 554 to 561. (3) Plaintiff's expulsion was violative of his rights as passenger. Plaintiff, having been a passenger, the act of expulsion by the gripman, whether authorized or unauthorized by appellant, was a violation of plaintiff's rights as such passenger and of appellant's duty to him. Winnegar v. Street Railway, 85 Ky. 547; Jackson v. Street Railway, 118 Mo. 200; Czezewzka v. Street Railway, 121 Mo. 201; Brill v. Eddy, 115 Mo. 596; Railway Co. v. Washington, 30 S. W. Rep. 719; Railway Co. v. Edmund, 29 S. W. Rep. 518; Farber v. Street Railway, 110 Mo. 81. (4) It was not negligence as a matter of law for the plaintiff to ride on the side step of the grip car. Seymour v. Street Railway, 114 Mo. 266; Buck v. Street Railway, 46 Mo. App. 555. However, the assault of the plaintiff by the gripman, having been willful and intentional, there is no contributory negligence in the case. Ruter v. Foy, 46 Iowa, 132; Beach on Contrib. Neg. (2 Ed.), sec. 50, page 68. (5) The instructions of the court to the jury were proper and fairly submitted the case for decision. There is no variance between plaintiff's petition and proofs. 28 Am. and Eng. Ency. of Law, 56; Kline v. Railroad, 39 Cal. 591. There is no substantial inconsistency or contradiction in the different parts of plaintiff's testimony. (6) The change of venue from Jackson county to Johnson county was proper. Plaintiff's next friend, and not the plaintiff, was the proper person to make

the affidavit and petition therefor. Infants and babies are not qualified to manage their law-suits. That is why they are represented by their guardians or next friends. Dowling v. Allen, 88 Mo. 293; Stewart v. Mattock, 82 Mo. 455; 10 Am. and Eng. Ency. of Law, 681; Sutton v. Nichols, 20 Kan. 46; sec. 1997, R. S. 1889; Deford v. Keyser, 30 Md. 180.

IN DIVISION TWO.

SHERWOOD, J.—Action brought 10th day of March, 1894, for $25,000 damages, for injury done to a boy 9 years of age on May 18, 1891, by one of defendant company's cable cars. Two counts were in the petition; the first, that upon which recovery was had, charged that defendant operated a cable street railway upon Twelfth street in Kansas City; that Martin Raming was a newsboy who had in the past been permitted by defendant's servants to board cars and sell newspapers to passengers thereon, and further averred: "That when said car reached a point near what is known as Twelfth and Locust street, a short distance from where plaintiff boarded said car, and while he was still on the running board of same, selling his papers, and before he had taken a seat, one of the servants of the defendant, operating the car, rushed at plaintiff with a broom in hand, and while said car was going at its usual rate of speed—from eight to twelve miles an hour—said servant did carelessly and negligently, without any regard for the safety of plaintiff, push him off said car, violently throwing him on the hard pavement in the street, and carelessly and wantonly ran said car on and over plaintiff, cutting his left leg off, and bruising his limbs and body, making him sick and sore and a cripple for life, and causing plaintiff physical pain and mental anguish, which must continue while he lives."

The second count of the petition was for the same injury, being based upon an alleged failure to comply with section 869 of the Revised Ordinances of the city, requiring a fender to be placed upon each car within two inches of the ground. The answer consisted of a general denial, a plea of contributory negligence and a plea that the fender ordinance was unreasonable, impracticable, oppressive and void. Recovery was had on the first count for $12,500.

The second count was eliminated from further consideration owing to the fact that defendant's assertion that it was invalid for the reasons stated in the answer, was supported by the evidence and sustained by the trial court in an instruction, and no motion was made to set aside the verdict which went in favor of defendant on that count.

Matters which necessarily precede any others, will now be discussed. These matters consist of an application for a change of venue, made in Jackson county and various matters connected therewith and incident thereto, and resulting in a change being effected and the cause being sent to Johnson county.

The application and affidavit for the change were as follow: "Your petitioner, H. H. Raming, plaintiff, respectfully represents that he has been duly appointed the next friend of Martin H. Raming, a minor; that the above suit is now pending in this court, the general object and nature of which suit is to recover damages against the defendant; that your petitioner has good reason to believe and does believe that he can not have a fair and impartial trial of said cause in Jackson county, Missouri, against the defendant, for the reason that the defendant has undue influence over the inhabitants of said Jackson county, and prays the court for a change of venue to some other county where such cause does not exist; that he has given notice of the making of this application to Pratt, Ferry & Hagerman, attorneys for defendant, the same

having been served on them on the 12th day of May, 1894. Plaintiff further states that he became possessed of this information and knowledge of the existence of the cause herein alleged as a ground for a change of venue since the filing of the petition in cause No. 12121 in this court, which was the same cause of action sued on herein and which cause was dismissed, and since the adjournment of the last regular term of this court.			H. H. Raming."

"State of Missouri, ⎱
County of Jackson, ⎰ ss.

"H. H. Raming, being duly sworn, on his oath says that he has been appointed next friend of Martin H. Raming, a minor, and is now acting as such in said cause, and that the facts stated in the above petition are true, and that he has just cause to believe that he can not have a fair trial in said Jackson county on account of the cause therein alleged.

					"H. H. Raming.

"Subscribed and sworn to before me, H. H. Noland, clerk of circuit court in and for said county, this 12th day of May, 1894.			"H. H. Noland, Clerk.

"(Seal)			By S. W. Strode, D. C."

This application for a change of venue was resisted by defendant on various grounds, based on the insufficiency of the application and its verification. These objections being overruled, defendant excepted, and its exception was preserved.

1. It will be noted that in the application already quoted that reference is made to a former suit No. 12121, for the same cause of action. At what time this former suit was instituted, no information is given, but at any rate, it was pending on the 11th day of October, 1893, and on that day H. H. Raming *prochein ami* then prepared an application for a change of venue based on the very same cause that the application in this cause is based on, to-wit, that "defendant

has an undue influence over the inhabitants of said Jackson county" and that first application concludes with these words: "Plaintiff further states that he became possessed of his information and knowledge of the existence of the cause herein alleged as a ground for a change of venue since the filing of the petition in said cause, and since the adjournment of the last regular term of this court.

"Deatherage & Young,
"Hollis & Lithgow, Attorneys."

Indorsed on that application is service of notice of same on defendant's counsel on the same day and a statement that the application would be presented on October 14, 1893.

Thus, it will be seen that knowledge of the same facts and cause of change of venue as are specified in the second application were possessed by the appellant at least as early as on the 11th day of October, 1893, and how much earlier is not disclosed. Upon the hearing of the second application for a change of venue, the first application, affidavit, etc., were read in evidence, but without avail, as the Jackson Circuit Court granted the change, and ordered the cause sent to the Johnson Circuit Court, and defendant saved its exceptions.

When the transcript in the cause reached the Johnson Circuit Court, defendant filed objections to that court entertaining jurisdiction of the cause on the grounds, that the affidavit for the change was made by H. H. Raming and not by the minor, and that the application was otherwise insufficient for the change, and that the change was erroneously allowed. The testimony offered in support of said objections is that heretofore mentioned, but the Johnson Circuit Court overruled said objections and defendant excepted. The application was bad for several reasons: In the first place section 2261, Revised Statutes 1889, contains these provisions: "Any party may present to the court, or judge thereof in vacation,

a petition setting forth the cause of his application for a change of venue [and when he obtained his information and knowledge of the existence thereof], and he shall annex thereto an affidavit to the truth of the petition, and that he has just cause to believe that he can not have a fair trial on account of the cause alleged." This section has been materially changed from what it was in General Statutes 1865, p. 634, section 3, by the addition of the words I have placed in brackets, to-wit, "and when he obtained his information and knowledge of the existence thereof." See 1 R. S. 1879, sec. 3732.

It will not escape observation that the application under discussion does not state "when" the applicant "obtained his information and knowledge of the existence of the cause whereon" he bases his application. PHILLIPS, P. J., in adverting to the change wrought by the interpolation of the words bracketed, said: "It will be observed that neither the petition nor the affidavit in question contain the words last quoted. It is not necessary to inquire into the policy or motive of the legislature in interpolating these words into the statute. It is sufficient for the courts to know that the statute is so written; and it presents a case where the statute must stand for a reason. [Young v. Glasscock, 79 Mo. 578.] .... The right to a change of venue is purely statutory, and to entitle a party to such change he must comply with all the substantial requirements of the enabling act. [Huthsing v. Moss, 36 Mo. 107-8]. This radical defect in the petition was sufficient to justify the action of the court in refusing the application." [Smith v. Railroad, 31 Mo. App. 135.]

So, also, in Railroad v. Holladay, 131 Mo. 440, this court commenting on the interpolated statutory words aforesaid, remarked: "Section 2261 requires that affiant shall state 'when he obtained his information and knowledge of the existence' of the cause assigned as the basis of the appli-

cation.   Here the statement made is that such information reached affiant 'since the last term of the Carter county circuit court.'   How long 'since' that term does not appear. Obviously such a statement is not a compliance with the statute, and does not enable the court to determine what diligence, if indeed any, has been employed, after discovering the ground therefor, in applying for the change."

But no matter what, or how formally correct the second application might have been, its allegations are branded as, and proved to be, false by those of the first.

As stated at the outset, the present action was brought on the 10th day of March, 1894, and as shown by the first application the applicant was apprised of the "undue influence," etc., as early or earlier than October 11, 1893.   The second application was presented on June 27, 1894, more than eight months after the applicant was possessed of the knowledge, etc., which authorized such application to be made.   The bare statement of such self-falsifying allegations in the two applications beggars description and renders argument unnecessary.

Again, section 2261, *supra*, says, "Any party may present to the court or judge in vacation a petition," etc.   Now it is well settled that a next friend is not a party to a suit where his name simply appears as such next friend.   In Sinclair v. Sinclair, 13 M. & W., star page 640, it was contended that the *prochein ami* was a "party individually named in the record," and therefore, incompetent as a witness, but POLLOCK, C. B., observed:  "The question in this case is, whether the *prochein ami* is a party to the suit; if he is a party, then the question we have to decide is whether he can be called as a witness, notwithstanding he has an interest in the event of the suit, the late statute having got rid of all objection on the ground of interest, with the exception of certain cases which are therein excepted.   The question

comes simply to this, whether the *prochein ami* is a party to the suit; if he is, he is a party named in the record, and can not be examined; but I am of the opinion that he is not a party. It appears to me that the view taken by this court, in the case of Morgan v. Thorne, 7 M. & W. 400, is perfectly correct; that he is not a party, but is merely to be considered as an officer of the court, specially appointed by them to look after the interests of the infant. My Brother PARKE there says, 'It appears perfectly clear that every *prochein ami* is to be considered as an officer of the court, specially appointed by them to look after the interests of the infant.' And my Brother ALDERSON says, 'It is in fact almost the same thing as appointing an attorney.' It appears to me, therefore, that the *prochein ami* can not be considered a party to the suit; and it is clear that, since the passing of the stat. 6 & 7 Vict., c. 85, any interest he may have in respect of the costs, or any liability that may attach to him as being the *prochein ami* in that suit, is no longer a ground of objection to his competency as a witness."

So, also, in Brown v. Hull, 16 Vt. 673, is is held that where an infant begins an action in the name of his next friend, the person so named is not regarded, for any purpose, as a party to the suit; and that where the defendant is defaulted in such suit, and pursuant to statute, petitions the court to vacate such judgment on the ground of being deprived of his day in court by reason of accident, etc., the petition for such vacation is sufficiently served upon the infant alone, nor is it necessary for the next friend to be named in the petition, HEBARD, J., remarking: "Did the court err in not dismissing the petition? This depends upon another question, and that is, who was the party? If the *prochein ami* was the party, the petition should have been dismissed; if the minor was the party, the petition should have been retained. . . . . The statute requires the petition to be served

upon the adverse party; and it was served upon the infant, who is the adverse party.    The next friend is not regarded as a party for any purpose.    The judgment is not against him."

So in Bartlett v. Batts, 14 Ga. 539, it is said:    "The suit, although attended by a next friend, was the suit of the infant.    The next friend was merely an officer of the court, appointed by the court to look after the interests of the infant.    He was not a party to the suit."

In Minnesota, it was ruled that a *prochein ami* and guardian *ad litem*, under the statute of that State, were included under the one term guardian, and that there was no more reason for holding a guardian *ad litem* a party to the action than a *prochein ami* and after citing and quoting from a large number of authorities supporting the latter position, it was concluded that a judge of the Supreme Court, though related to the guardian *ad litem* was not disqualified to sit in the cause inasmuch as such guardian was not a party to the suit. [Bryant v. Livermore, 20 Minn. 313.    And see, also, Dahoney v. Hall, 20 Ind. 264; McDonald v. McDonald, 24 Ind. 68, and 10 Am. and Eng. Ency. of Law (1 Ed.), 684.]

Touching this topic, it was said by the Supreme Court of Alabama a long while ago:    "A *prochein ami*, is one admitted by the court to prosecute for the infant, because otherwise he might be prejudiced by the refusal or neglect of his guardian.    [10 Petersdorff, 579, note.]    He is in fact but a species of attorney who is permitted to act for the infant so far as to conduct his suit, but he has certainly not a more extensive authority than an attorney at law, who can not enter into a bond or compromise the right of his client. [Holker v. Parker, 7 Cranch 436.]    Indeed, his authority does not extend so far, for he is not authorized to receive the amount which may be recovered by the infant, but the same should be paid over to a lawful guardian, alone, as it

might otherwise be squandered, and the infant receive no benefit." [Isaacs v. Boyd, 5 Porter, loc. cit. 393.]

In New York the statute required that in actions of replevin a bond must be given by sureties independently of the party. In such an action by an infant, his next friend by whom he sued became one of the two sureties for the plaintiff and on its being objected that the bond was insufficient because the next friend was a party, COWEN, J., "held he was not a party, but rather in the nature of an attorney; and so the proceedings were well enough." Anonymous, 2 Hill 417.

In North Carolina, in a comparatively recent case, in discussing the subject here presented, it is said: "Generally, an infant can maintain an action if he has a just cause of action, just as an adult may do, the only difference being in the mode of conducting it. His action must be brought and prosecuted in his own name, and it is in all respects his, just as if he were of full age; but it must be managed and prosecuted, not by himself, but by his guardian or next friend, under the supervision and control of the court. . . . . . . The guardian or next friend is not in a legal sense a party to the action, although his name appears in the record." [Tate v. Mott, 96 N. C. loc. cit. 22.]

Taking it then, as true, that a *prochein ami* is not a party to the action, is it competent for him to make an application for a change of venue? Section 2261, *supra*, with the bracketed exception heretofore noted, has been on the statute-book for over half a century. [R. S. 1845, p. 1072, sec. 2; 2 R. S. 1855, p. 1559, sec. 3; G. S. 1865, p. 634, sec. 3; 1 R. S. 1879, sec. 3732.]

This section has been frequently construed by this court, and always that the party himself was the meaning as well as the language of the section. [Lewin v. Dille & Avery, 17 Mo. 64; Huthsing v. Maus, 36 Mo. 101; Norvell

v. Porter, 62 Mo. 309; In re Whitson's Estate, 89 Mo. 58; Squires v. Chillicothe, Ib. 226; Jaffray v. Claflin & Co., 119 Mo. 117.]

As pointed out above in Huthsing v. Maus, and Smith v. Railroad, the right to a change of venue is purely statutory, and to entitle a party to such change he must comply with all the substantial requirements of the enabling act. The statute in such case stands for its own reason, but were it permissible to inquire after the intent of the legislature where the language used is so plain, such intent would doubtless be conspicuously revealed by contemporary statutes. Thus, as pointed out in Huthsing v. Maus, *supra,* while the statute in civil cases requires the application to be made by the party, that in criminal cases allows the application to be made by the defendant, or where the defendant is under the age of 16, by the parent or guardian of such defendant, or if no parent or guardian, then by a respectable citizen, etc. [G. S., p. 845, sec. 18.] This section has been on the statute-book as long as the statute authorizing changes of venue in civil cases. [R. S. 1845, sec. 19, p. 874; 2 R. S. 1855, sec. 19, p. 1184; R. S. 1879, sec. 1858; R. S. 1889, sec. 4155.]

Other contemporary statutes shed light on the legislative intent in this regard: Thus, in verifying pleadings, the affidavit could be made either by the party himself or "his agent or attorney." [2 R. S. 1855, sec. 20, p. 1234.]

Thus in an affidavit for an attachment: The affidavit could be made by the plaintiff "or some person for him." [R. S. 1845, sec. 3, p. 134; 1 R. S. 1855, sec. 6, p. 240; G. S. 1865, p. 562, sec. 6; R. S. 1879, sec. 403; R. S. 1889, sec. 526.]

Thus in orders for publication for enforcement of liens, etc., etc., the plaintiff "or some person for him" could file an affidavit. [R. S. 1889, sec. 2022; R. S. 1879, sec. 3494;

G. S. 1865, p. 655, sec. 13; 2 R. S. 1855, p. 1224, sec. 13.]

So it will be seen that section 2261 differs from all the other sections quoted in respect of making either application for change of venue, or affidavit.

And this court in construing the statute relating to civil changes of venue has always given it a strict construction, holding from its first ruling on the subject Lewin v. Dille & Avery, 17 Mo. 64, Huthsing v. Maus, 36 Mo. 101; Norvell v. Porter, 62 Mo. 309, and Jaffray v. Claflin Co., 119 Mo. 117, that an application for a change of venue could only be made by a party to the suit, and not by an attorney. The other cases I have cited on the subject, which lie between the 17th and 119th Mo., all announce the same doctrine, though applied to applications made by persons other than attorneys.

Taking into consideration the fact that four revisions of the statutes have occurred since section 2261 was first passed upon, and that no change has been made therein on the point before us by the legislature though presumably conversant with those decisions when going through those revisions, it would seem to amount to a tacit recognition by the legislature of the correctness of the judicial rulings aforesaid, and a desire not to interfere with them by making any change in the statute; and that the legislature recognized and understood the difference between the making an affidavit or application by the party himself or by "some person for him." [Sutherland Stat. Constr., sec. 307.]

Furthermore, this court has given the same strictness of construction to section 3499, Revised Statutes 1879, relating to publication as to unknown parties, as had been given to section 2261 aforesaid, by ruling that inasmuch as section 3499 specified that: "If any plaintiff shall allege in his petition under oath," etc.; that if an attorney made the oath the proceedings would be invalid. [Quigley v. Bank, 80 Mo.

289.]    Other States have made similar rulings.    Thus in Indiana, the statute provided:    "When either party shall make and file an affidavit of the bias, prejudice or interest of the judge before whom said cause is pending, the said court shall grant a change of venue," and under this statute application was made by the attorney of the plaintiff, and the Supreme Court in passing on the sufficiency of the application, said:    "Where the application is made on the ground stated in the affidavit in this case, the affidavit must be both made and filed by the party.    The language of the statute is explicit, and admits of no other construction.    The right to a change depends upon the statute, and the party asking it must take it on the terms prescribed by the statute, or not at all."    [Stevens v. Burr, 61 Ind. loc. cit. 465, 466. See to same point, Heshion v. Pressley, 80 Ind. 490.]

So in Illinois, an application was made by some person for the defendant, and the court held it fatal to the application, remarking:    "There is no statute that authorizes any other person to petition for a change of venue on behalf of defendant, and the application was properly denied."    McCauley v. People, 88 Ill. 578.

Moreover, even if the application could properly be made by the *prochein ami* it would have to be made in the name and on behalf of the infant; instead of that, the applicant in this instance alleges, "that he can not have a fair and impartial trial," etc.; *non constat* but that the minor might have as fair a trial as could be desired and had no reason to believe he could not have such a trial.

Viewed then, in any light, the application must be held erroneously granted, and that, defendant's exceptions being duly saved, it was in a position to take advantage of the error.    [Squires v. Chillicothe, 89 Mo. loc. cit. 232, and cas. cit.]    Consequent upon defendant being in this advantageous position, the Johnson Circuit Court should have en-

Raming v. Metropolitan St. Ry.

tertained defendant's objections to that court taking or re-
taining jurisdiction of the cause, and should have transferred
the cause to the Jackson Circuit Court. [State ex rel. v.
Bacon, 107 Mo. 627.]

2. Relative to the substitution of Mrs. Raming as next
friend in place of H. H. Raming, deceased, no error is dis-
covered, if the cause had been regularly transferred to the
Johnson Circuit Court, since, as before seen, a *prochein ami*
is not a party to the action, is but a "species of attorney" ap-
pointed by the court, and when he dies, there is no more rea-
son for the cause being revived than had a regular attorney
in the cause died. The next friend is removable by the
court whenever just cause arises. [Tate v. Mott, *supra,*
and cases cited.]

In consideration of the premises, we reverse the judg-
ment and remand the cause to the Johnson Circuit Court
with directions to transfer the same to the Jackson Circuit
Court from whence it came. All concur.

IN BANC.

SHERWOOD, J.—1. The foregoing opinion deliv-
ered in Division No. 2 of this court, was subsequently trans-
ferred to Court in Banc, and argued there.

Since then, some additional thoughts have occurred to
me respecting the application for a change of venue. Counsel
for plaintiff assert that the guardian *ad litem* should have
been permitted to make it for the minor on the ground of
necessity. But conceding for argument's sake that such ne-
cessity exists as to a minor of tender years, and therefore
renders competent the guardian *ad litem* when making such
application, and authorizes the court to receive it, still, when
the supposed necessity for the guardian *ad litem* to make the
application ceases, certainly his power to make it should cease
with the necessity which gives it origin. In this case the boy

at the time in question was something over 12 years of age, and as his testimony shows, a bright, smart, intelligent boy. And it has been ruled that a boy of 15 years old will be presumed of sufficient intelligence to make an application for a change of venue.    [Albert v. State to use, 66 Md. 325.]

In another case it was ruled that a minor of 12 years of age possessed sufficient intelligence to make such an application.    So that, look at this point as you will, if you turn to the statute you find no authority for the guardian *ad litem's* application there, and if you turn to necessity, you will find that non-existent, because the minor was sufficiently intelligent to make his own application; and in any event the guardian *ad litem* should make the application for the infant, and not for himself, and would have to allege the existence of prejudice against the infant and not against himself.

Some little attention, it seems to me, should be paid to the statute, even if you hold the guardian *ad litem* competent.

2.    Quitting now the preliminary question just discussed, I proceed to the merits of this cause.

It was admitted by the parties that the defendant's cars were operated by an endless cable, the cars being operated by attaching them thereto by means of a grip-iron operated by the gripman from a point a little in front of the center of the car.    There was no other testimony as to the duties of this gripman, nor any pretense elsewhere in the testimony that he had charge of the train or anything to do with it further than the mere operation thereof, nor any duty to perform as to passengers, licensees or trespassers.

The injured boy, Martin Herman Raming, about 13 years old at the time of the trial, and 9 years of age at the time of the accident, testified that on May 18, 1891, he was engaged in selling newspapers and had been so engaged for 8 months living within a half block of defendant's double-

track Twelfth street line.  His route for selling papers was from Holmes street to Main upon Twelfth, a distance of about 8 blocks.  He was fully aware of the danger from the cars and of the danger of attempting to step off from the foot-board of the grip-car to the step of the coach, as well as of riding on the foot-board and getting on or off the cars while in motion, yet he would "hop cars," that is to say, jump on and off of the same while in full motion.  In selling his papers he would "hop" a car, go through each car of the train to see if he could sell a paper, then "hop" off again, attempt to sell to customers along the line, "hop" the next car that came along and ride down to Main street, where he would again try to ply his vocation.  When he "hopped" a car he would walk along the foot-board of the grip-car soliciting purchasers and then go back along the foot-board and into the coach and "hop" off again.  May 18th, 1891, he was selling the Kansas City Star at two cents a copy, of which his profit was one cent for each paper sold.  His entire stock of newspapers at that time consisted of five papers, which is a very significant fact, because of the declaration that he would have paid fare "if the conductor had asked for the same." While the car in question was going by at its usual speed, he jumped on the rear end of the grip-car; this was two blocks from the place of injury.  He passed along the foot-board to the front end of the train and then passed back again on his way to the coach, and says that just as he was going back before he had time to sell a paper the gripman shoved at him with a broom and then put that down and went at him with his hand, but could not reach him and did not touch him at all, but that plaintiff dodged without being touched and fell from the car, getting under the wheels of the coach so that they passed over him, crushing his leg below the knee, requiring amputation.  The gripman never said anything to

him.   He had suffered no pain for the year previous and had no injury other than the loss of his leg, getting out in five weeks.   While he says he would have paid his fare if he had been asked, he didn't intend or expect so to do, as he got on simply to sell papers.

Mrs. Anna Raming, mother of the injured boy, testified that Martin was nearly nine years old when the accident occurred; that he was an exceedingly bright boy for his age; that he had gone to school three years and was in second reader; that he had lived in various places in the business part of town all his life and ran on the streets a great deal.

Mrs. Tinsley's deposition was taken at a time when plaintiff claimed that he was actually shoved from the car. Her story is practically this.   She was riding on the south side of the car and saw plaintiff on the north side thereof, but saw no demonstrations by the gripman; she stepped off the train while in full motion, and was at once accosted by a friend with "Where are you going, Mother Tinsley?"   As she turned around she saw plaintiff under the car.   After he was carried to the curbstone, she asked him how it happened, and he said the gripman shoved him off.   This statement he repeated at three different times and places afterwards.   In view of the plaintiff's knowledge at the time that he was hurt as asserted by defendant's witnesses and that he was in the wrong, it is declared that this testimony was but a narrative, especially as it is contradicted, the statements of plaintiff as a witness.

Dr. K. P. Jones and Dr. S. G. Gant testified to having amputated plaintiff's leg above the knee and described no other injury.

At the close of plaintiff's case a demurrer was interposed to the evidence upon each count of the petition, but the same was overruled and such action is the subject of discussion, and at the close of all the testimony the demurrer was

again interposed in the form of a direction for a verdict on the first count, which was denied.

Plaintiff's deposition taken in October, 1891, was read, from which it appeared plaintiff testified that the gripman actually shoved him off, that the conductor was not on the grip-car while he was there, and that when he fell he rolled out from the grip-car and back under the hind wheels of the coach.

J. C. Bronaugh testified: that he was on the car when the Raming boy was hurt and was seated on the north side of the rear car next to the front, with nothing but the window between him and the grip-car; he saw the boy on the footboard of the grip-car, on the north side of the car; his attention was attracted because he wanted to buy one of the papers which the boy was selling; the boy was on the front end and was coming back toward the rear car and was near the end of the grip car, and passed out of sight, so that he didn't see him actually fall; the boy was on the rear end of grip car, eight or ten feet from the gripman; the gripman was at his post and in plain sight of witness and made no motions of any kind.

Mrs. John Keneaster testified: she was on the rear car at the time of the accident and happened to look toward the grip-car and saw the child's head, and that he then disappeared. "It seemed as though he was standing on the back of the grip-car," and "right at the back part I saw his head and then he disappeared;" the gripman was standing right at his post of duty looking right straight ahead and made no motion at the boy that she could see; she was looking at the boy and up by the gripman and saw the boy; there was nothing to obstruct her view and the gripman was at his post of duty.

Miss Jose Ahearne testified: she was on the train at the time of the accident, sitting on the left side of the coach

about midway between the window and stove, about three or four feet from front part of coach, where she had a plain view through the open door; the boy was standing on the foot-board at the rear of the grip-car just about to step over to the coach; that he held on to the upright and tried to step over to the coach but missed his footing and fell; she saw no demonstrations toward the boy by the gripman. (It may be here observed that plaintiff admitted that other boys passed in this way from grip to coach, but said he would not have done so because of the known danger.)

Miss Maggie Deyo testified: she was on the car when the Raming boy was hurt, sitting in the coach on the north side about the middle of the car; Mr. Bronaugh was on the car; she saw the boy stepping from the grip-car to the coach and then saw him fall; he was on the rear part of the grip-car on the running-board; she didn't see anyone making a motion toward the boy; he made that step and then disappeared; she saw the boy make the step and fall.

Miss Laura Frazier testified: in May, 1891, when Raming boy was hurt, she was on the grip-car, north side, about three feet back of the gripman; she saw him when he passed her going towards the coach on the foot-board of the grip-car, and the next time she saw him he was lying on the street; the gripman made no motion with a broom or anything else toward the boy; the gripman was in his box and she didn't see any motions made by him; there was no grabbing at the boy nor any motion made by anybody toward him nor any dodging by him when she saw him; and she was in the next to the rear seat past which the boy was going on the foot-board toward the coach.

Mrs. Mary Aldrich testified: she was on the car at the time of the accident, sitting on the third seat from front of grip car on the north side of the car about one seat behind the gripman who was standing in his box; the boy passed her

and went to the rear end of the car, then went to step from the foot-board to the step of the coach, and fell, and the next thing she saw of him he was crawling on the ground; the gripman didn't do anything except hold his hand on the lever, made no motion toward the boy or any person; the boy did not dodge anyone.

Samuel J. Cook testified: he was the conductor in charge of the train when accident occurred; that he knew nothing about how it happened, nor as to the boy being in the coach; taking up fares at the time. This was also practically established by plaintiff's own testimony.

E. S. Prouty, the gripman, said that the boy boarded the car when going at full speed, with his papers, and walked past him on the running-board and that was the last he saw of him until he heard screaming and stopped the train; he did not know how the boy got off, but he made no motion with broom or otherwise towards him.

At the instance of plaintiff the court gave these instructions:

"I. The court instructs the jury that in this case Anna Raming is duly appointed next friend for the prosecution of this suit for the minor plaintiff, Martin Herman Raming. You are further instructed that the defendant was on the 18th day of May, 1891, operating a line of railroad in Kansas City, Missouri, street railway propelled by endless cable, known as the Twelfth street line. Now if you find and believe from the evidence that Martin Herman Raming, plaintiff, on the 18th day of May, 1891, in said Kansas City, boarded a car of defendant's said line as a passenger, and that a servant of defendant in charge of said car negligently and carelessly offered or attempted to push plaintiff from the car, or to grab or catch him, and thereby caused plaintiff, without negligence on his part, to fall from the car and re-

ceive the injuries complained of, then the jury will find the issues for the plaintiff upon the first count in the petition.

"II.    Although the jury may believe from the evidence that the plaintiff had not paid his fare at the time of the injury, yet, if they further find from the evidence that he was on the defendant's car with the knowledge and consent of defendant's employees in charge of said car, or if after defendant's employees became aware of his presence on the said car they suffered him to remain, then he was a passenger and entitled to the same care and protection as if he had paid his fare.

"III.    The jury are instructed that the care and foresight required of a child is not the same as that which is required of a grown person, and that in the case of a child it is required to act with the care and prudence which can reasonably be expected of its capacity and age, and when it manifests as much care and prudence as can reasonably be expected from it, the child is not guilty of negligence, and if the jury find from the evidence that the plaintiff was of the age of nine years and did not possess the discretion of an adult or grown person at the time of the injury, then the jury should consider these facts in determining whether or not plaintiff was guilty of negligence at the time of said injury that contributed to cause the same.

"IV.    The jury are instructed that the term negligence as used in these instructions means a failure to exercise such reasonable care and caution as a reasonably prudent person would exercise under like circumstances.

"VI.    If the jury find for the plaintiff, they will take into consideration, in estimating his damages, not only his age and condition in life, the physical injury inflicted and bodily pain and mental anguish endured, but also any and all such damages, if any, which it appears from the evidence

will reasonably result to him in the future from the injury, not to exceed in all the sum of $25,000."

Upon its own motion the court gave these instructions:

"I.   The court instructs the jury that they are the sole judges of the credibility of the witnesses, and of the weight of the evidence.   You are not bound solely by the number of witnesses to any fact in issue, but you may in determining the weight of evidence take into consideration the demeanor of the witnesses while testifying, as well as their situation with relation to the facts they have testified about, also the likelihood of their knowing the facts they have testified about.   You are also at liberty to consider the reasonableness of the truth of the facts they have testified about, and make up your conclusion as to the weight of the evidence from all the facts and circumstances in evidence. And if you believe any witness has knowingly sworn falsely to any material fact, you are at liberty to disregard the whole testimony of such witness or witnesses.

"II.   The petition in this case is in two counts and as to the first count of the petition the court charges you that the plaintiff can not recover unless you at least find from the greater weight of all the testimony in the case including that offered by the plaintiff as well as that offered by defendant, that the gripman actually struck or grabbed at the boy or pushed or attempted to push him from the car and missed him and the boy fell from the car in dodging.

"III.   The difference between negligence on the part of the plaintiff and defendant is this:   Negligence on defendant's part must be the cause of the injury, whereas negligence on the part of the boy defeats a recovery if it but contributes to the injury, even though the defendant may also have been negligent.

"IV.   If the Raming boy was riding on the foot-board of the grip-car while it was running at its usual speed, then

he was negligent, unless you believe from the evidence that he was a passenger as the word passenger is explained in another instruction."

At defendant's request the court gave the following instructions:

"II.   The court declares to you that the ordinance relating to fenders is unreasonable and void and that neither it nor any violation thereof shall be considered by the jury and that all evidence concerning said ordinance or said fender or its manner of construction, is hereby withdrawn from your consideration.

"IV.   The court instructs the jury that if you should find from the evidence that the Raming boy received the injury complained of, while attempting to step from the running-board of the grip-car to the step of the coach, while said cars were running at about their usual rate of speed, then your verdict will be for the defendant.

"VII.   If the Raming boy attempted to step off the moving train running at its usual speed, then he was negligent."

The petition contains a clause not heretofore copied, and which immediately precedes that portion which has been quoted; it is this:   "That on said 18th day of May, 1891, plaintiff boarded one of defendant's cars at a point known as Twelfth and Holmes street with the knowledge and permission of defendant's servants operating the same, for the purpose of selling papers to passengers, and with the intention of becoming a passenger thereon."

*a.*   The words, "and with the intention of becoming a passenger thereon," are by no means equivalent to an averment that plaintiff did become a passenger thereon.   "The standards of the law are external standards."   1  Beven on Neg. (2 Ed.), p. 17.

"Intention and knowledge are not traversable; they can

not be known" (Basely v. Clarkson, 3 Levinz, 37); as is said in the Year Book, 17 Edw. IV, 2, pl. 2, *"Car comen erudition est qui l'entent d'un home ne serra trie, car le diable n'ad conusance de l'entent de home."* With mere intention, unconnected with overt act or outward manifestation, the law has no concern. [Howell v. Stewart, 54 Mo. 400.] There is therefore no foundation laid in affirmative allegation that plaintiff was a passenger.

*b.* But granting he was a passenger so far as mere allegation goes, still there is no evidence to support it. He was simply a newsboy plying his vocation. He evidently did not intend nor expect to pay fare. According to his own story he jumped on the car when in full motion, to sell papers, intending to jump off again and to pay fare "if the conductor asked him;" the conductor did not see him, and the gripman tried at once to push him off. There is nothing to show that the gripman had any authority to grant plaintiff permission to ride or to refuse him permission, and therefore no contractual relation either express or implied was entered into by plaintiff, when he stepped upon, and ran along, the footboard of the cars, attempting to sell his papers. [Schepers v. Railroad, 126 Mo. 665; Schaefer v. Railroad, 128 Mo. 71.] In Padgett v. Moll and Citizen's Ry. Co., not yet reported, decided at the present term, Division No. 1 of this court, speaking through its organ, Judge VALLIANT, forcibly said concerning newsboys who sell newspapers on street cars: "But a newsboy jumping on and off a moving street car to sell his newspapers, not hailing to stop the car to receive him, nor signaling to stop to allow him to alight, not asking nor receiving permission either express or tacit, not asking or waiting for leave or license, but jumping on and off under circumstances that clearly indicate no purpose to pay fare, and no aim to be transported, but only to avail himself of the presence of persons on the car likely to buy his papers, is in no

sense a passenger, and the carrier is not under obligation to observe toward him the same degree of care that the law requires to be observed towards a person in the hands of the carrier to be transported." Indeed, we might go further than the language just used, for it is a matter of common knowledge, and therefore, we can take judicial notice of it, that a newsboy who hops on a car while at full speed, tries to sell papers and then hops off again while the car is in rapid motion, is in no sense, either in fact or intention or law a passenger. If a newsboy is a passenger, then he has the right to hail a car in the middle of a block, for the purpose of selling papers thereon; stop it in full motion; get on; sell his papers; pay no fare, and then signal again, stop the car and get off. If this were the law, it is easy to see that street cars would be at the mercy of newsboys and could not be practically operated. [See, also, Blackmore v. Toronto St. Ry. Co., 38 Up. Can. Q. B. 217; Fleming v. Brooklyn Railroad Co., 1 Abbott's N. Cas. 433; Duff v. Railroad, 91 Pa. St. 458.] For this reason defendant's demurrer to the evidence should have prevailed.

c. But it should have prevailed for another reason: The evidence did not correspond with the allegations. The petition charged that the gripman actually pushed plaintiff from the car, while plaintiff's own testimony showed that the gripman first shoved at him with the broom, then put that down, and tried to strike him with his hand, when plaintiff dodged the blow, and in doing so fell off the car, etc.

This court has always held that you can not state one cause of action and recover upon another. This is elementary law. [Beck v. Ferrara, 19 Mo. 30; Link v. Vaughn, 17 Mo. 585; Duncan v. Fisher, 18 Mo. 403; Robinson v. Rice, 20 Mo. 229; Huston v. Forsyth Scale Works, 56 Mo. 416; Eyerman v. Cemetery Ass'n, 61 Mo. 489; Ensworth v. Barton, 60 Mo. 511; Harris v. Railroad, 37 Mo. 307; McMan-

amee v. Railroad, 135 Mo. 440; Waldhier v. Railroad, 71 Mo. 514; Clements v. Yates, 69 Mo. 623; Hite v. Street Railway, 130 Mo. 132.]

*d.* Still another reason occurs why the demurrer should have been successful. The petition does not charge negligence, pure and simple, but a singular commingling or jumble of both negligence and wanton acts. If the act is intentional the question of negligence does not arise. [Whitaker's Smith on Neg. (Enlarg. Ed.) 207.] If the act be intentional, it becomes fraudulent or criminal, or it may be a trespass. [Ibid, 3.]

Wharton says: "Negligence, to state this in other words, necessarily excludes a condition of mind which is capable either of designing an injury to another or of agreeing that an injury should be received from another. To contributory negligence, therefore, the maxim, *Volenti non fit injuria,* does not apply, because a negligent person exercises no will at all. The moment he wills to do the injury, or to combine in doing the injury, then he ceases to be negligent, and the case becomes one of malice or fraud." [Law of Negligence (5 Ed.), sec. 132.]

Other authors say: "The rule excluding a recovery in cases of contributory negligence is of course only applicable to actions founded upon negligence. It is universally conceded that the greatest contributory fault, including a willful trespass, is no defense in an action for willful injuries." [1 Shear. & Redf. on Neg. (5 Ed.), sec. 64.]

Beach in the recent edition of his work, says: "When the wrongdoing of the defendant is merely negligence, the contributory negligence of the plaintiff may, as is well understood, operate as a defense, but when the defendant's conduct is willful, it is no longer negligence, and when the injury sustained by the plaintiff is the result of the wanton and willful act of the defendant, the question of the plaintiff's con-

tributory negligence as a defense can not arise.    In order to constitute contributory negligence on the part of the plaintiff, there must be negligence on the part of the defendant. It is accordingly the settled rule that when the defendant's conduct amounts to willfulness, and when the mischief is occasioned by his intentional and wanton wrongdoing, the plaintiff's negligence is no defense."    [Beach Contrib. Neg. (3 Ed.), sec. 64.]

In Ruter v. Foy, 46 Iowa 132, ADAMS, J., touching this point, aptly said:    "There can be no contributory negligence except where the defendant has been guilty of negligence to which the plaintiff's negligence could contribute.    An assault and battery is not negligence.    The former is intentional; the latter is unintentional."

Now the allegations being considered, state acts as being both negligent or inadvertent, and wanton or willful at one and the same moment.    This amounts to a contradiction in terms.    If the act was careless or negligent it was not willful and *vice versa*.    The statements of the petition are so repugnant to each other; so heterogeneous in their make up, that any amount of testimony brought forward to support them would necessarily be equally repugnant, and therefore amount to no support at all; one portion of the testimony would kill the other.    The petition on its face is a *felo de se*.

3.    Inasmuch as the plaintiff was not a passenger, as we have already determined, then any instructions based on that theory were of course erroneous.    But the 4th instruction given of the court's own motion contains a peculiarity of error worthy of passing mention; it declares:    "If the Raming boy was riding on the foot-board of the grip-car while it was running at its usual speed, then he was negligent, unless you believe from the evidence that he was a passenger as the word passenger is explained in another instruction."

If the boy was negligent because of riding on the foot-

board of the car while it was running at its usual speed, it is difficult to see how he could cease being negligent because he was a passenger.

4. If the plaintiff was not a passenger, then the defendant company could only become liable by reason of the fact that the alleged acts of the gripman were within the scope of his duties, as was determined in Farber v. Railroad, 116 Mo. 81; s. c., 32 Mo. App. 378. But there was no such allegation in the petition, and no evidence on the point. This being the case, no recovery could be had on such ground, absent such allegation and absent such evidence.

5. But no recovery could be had on that ground in this action, because it is bottomed in theory on the fact of plaintiff being a passenger, and on that theory it was submitted to the jury. It is too late now in this court to argue for a recovery on the theory that plaintiff was not a passenger.

6. It is unnecessary to discuss other errors assigned.

The judgment is reversed and the cause remanded.

*Gantt, C. J.,* concurs in the separate opinion of *Valliant, J.,* and does not agree to the views herein expressed on change of venue. He concurs in sub-paragraph, "a" and "b" of paragraph 2, and in all of paragraph 3 of this opinion. *Burgess, J.,* concurs with *Valliant, J.,* as to the change of venue and concurs with this opinion on the merits, except as to the Farber case. *Marshall, J.,* concurs *in toto. Robinson, J.,* concurs except as to the change of venue, as to which he agrees in the opinion of *Valliant, J. Brace, J.,* concurs in the result, for the reasons expressed in Judge *Valliant's* opinion.

### SEPARATE OPINION.

VALLIANT, J.—The question whether or not the application for a change of venue in this case was sufficient

is an important one, involving in its consideration the rights
of infants to that protection against prejudice or undue
influence which the statute in regard to changes of venue
in civil cases was designed to afford.    And since all the mem-
bers of this court are not of one mind on that question it is
deemed proper to give expression to the following views:

The record shows that at the January term, 1894, of the
circuit court of Jackson county, Herman H. Raming was by
that court duly appointed and qualified as next friend of
Martin H. Raming, minor, to institute and prosecute this
suit, and that on March 10, 1894, which was the date of his
appointment, this suit was begun, the petition filed and writ
issued, returnable to the April term, to which term the writ
was returned executed.    On the third day of that term the
defendant filed a motion to require the plaintiff to give
security for costs, which motion the court on the twelfth day
of the term sustained, and on the same day, on plaintiff's
petition, granted him leave to sue as a poor person; six days
after, the defendant filed a motion to stay proceedings until
the plaintiff should pay the costs of a previous suit in the
same cause of action, in which he had suffered a nonsuit;
pending that motion, the application for a change of venue
was filed; pending that application the motion to stay pro-
ceedings was overruled, and on the next day defendant filed
a demurrer to the petition, which ten days later was by the
court overruled, and defendant filed its answer and plaintiff
his reply, and on the next day the court considered the plain-
tiff's application and ordered the change of venue to the cir-
cuit court of Johnson county.

The application and affidavit are as follows:

"Your petitioner, H. H. Raming, plaintiff, respectfully
represents that he has been duly appointed the next friend
of Martin H. Raming, a minor; that the above suit is now
pending in this court, the general object and nature of which

suit is to recover damages against the defendant; that your petitioner has good reason to believe and does believe that he can not have a fair and impartial trial of said cause in Jackson county, Missouri, against the defendant, for the reason that the defendant has undue influence over the inhabitants of said Jackson county, and prays the court for a change of venue to some other county where such cause does not exist; that he has given notice of the making of this application to Pratt, Ferry & Hagerman, attorneys for defendant, the same having been served on them on the 12th day of May, 1894. Plaintiff further states that he became possessed of this information and knowledge of existence of the cause herein alleged as a ground for a change of venue since the filing of the petition in cause No. 12121 in this court, which was the same cause of action sued on herein and which cause was dismissed, and since the adjournment of the last regular term of this court.

"H. H. Raming.
        "Deatherage & Young, Attorneys for Plaintiff.

"State of Missouri, ⎫
 County of Jackson. ⎬ ss.
⎭

"H. H. Raming, being duly sworn, on his oath says that he has been appointed next friend of Martin H. Raming, a minor, and is now acting as such in said cause, and that the facts stated in the above petition are true, and that he has just cause to believe that he can not have a fair trial in said Jackson county on account of the cause therein alleged.

"H. H. Raming.

"Subscribed and sworn to before me, H. H. Noland, clerk of the circuit court in and for said county this 12th day of May, 1894.

        (Seal.)                H. H. Noland, Clerk.
"S. W. Strode, D. C."

Upon the hearing of this application, the foregoing petition and jurat were read and notice thereof to defendant's attorneys, service of which was acknowledged May 12, 1894; then the defendant read in evidence the application for a change of venue in the former suit above referred to, which application was sworn to October 11, 1893, and was on the same ground as that stated in this application. That was all the evidence offered at the hearing, and that evidence was offered, as stated in defendant's bill of exceptions, "to show that plaintiff and plaintiff's attorneys had knowledge of the ground for change of venue as set forth in plaintiff's application at the time of the institution of plaintiff's suit and long prior thereto." Defendant duly excepted to the order granting the change of venue and its bill of exceptions was allowed and signed in the Jackson circuit court.

I.     In the brief of counsel for the defendant there are two objections urged to the application for the change of venue, first, that it was made not by the infant, but by the next friend in his own name, and, second, that it was too indefinite and uncertain as to the time when the party became possessed of the knowledge of the alleged cause for the change. We will consider these two objections in the inverse order as above given.

There is no time specified in the statute within which a plaintiff must make his application for a change of venue. But the statute does provide that a defendant shall not be allowed a change of venue unless he makes his application before he files his answer to the merits, except when the information or knowledge of the facts on which the charge is asked has come to him since, and then the application must be made as soon as practicable thereafter. The statute also provides that either party moving for a change of venue shall state in his petition when he became possessed of the

knowledge or information on which he bases his motion and that the order for a change of venue shall not be made (except on the ground applicable to the judge) until the pleadings are filed and the issues made up.

These provisions go to show that it was the purpose of the lawmaker to require the party seeking a change of venue to act with reasonable diligence. The only possible reason for requiring him to state in his application when he discovered the facts on which he asks the change, is that the court may judge whether or not he has acted as promptly as he could have done under the circumstances.

The defendant introduced in evidence the plaintiff's petition for a change of venue in the former suit to show that the plaintiff and his attorneys had the information on which they base their application "at the time of the institution of plaintiff's suit and long prior thereto." But under the facts of this case, it was immaterial when the plaintiff becomes possessed of that information, because the record shows that he made his application as soon as, under the statute, he was permitted to do so. The record shows that both plaintiff and defendant were residents of Jackson county and although the plaintiff might have known before he brought the suit that he could not have a fair trial in that county yet there was no other court in which the suit could have been begun. On the third day of the term the defendant filed a motion to require plaintiff to give security for costs; that motion had the effect to arrest the plaintiff's action until the court had ruled upon it, and granted him leave to proceed. When the court had given him leave to prosecute his suit as a poor person the defendant again interposed with a motion to stay his action until he should pay the costs incurred in another suit, and it was pending that motion and before de-

fendant either demurred or answered the plaintiff's petition, that the petition for a change of venue was filed. It was the earliest moment that it could have been filed, and therefore it is immaterial how long he may have known the fact on which he based his application and the statements in the petition as to the time when he discovered or became informed of that fact, whether true or false, are immaterial. The fact that in the application reference is made to the former suit wherein a change of venue was granted on the same ground, shows that, whatever of contradiction there may have been in the two applications, there was no intention to deceive.

But the point on which defendant's counsel more seriously rely, is that the application was made, not by the infant, but by the next friend. Section 2261, Revised Statutes 1889, requires the application and affidavit to be made by the party, and it has been held that this means the party in his own person and not by agent or attorney. [Squire v. Chillicothe, 89 Mo. 226, and other cases cited in defendant's brief.] But it has never been decided in case of an infant suing by his next friend that the application can not be made by the next friend.

A next friend is neither the agent nor attorney for his ward. An agent or attorney derives his authority as such from his principal, but an infant can not appoint an agent ·and empower him to do an act which in contemplation of law he is himself incapable of doing. The next friend does not derive his authority from the infant, and his office does not rest on such authority either express or implied. "The law knows no distinction between infants of tender and of mature years; and as no special authority to sue is requisite in the case of an infant just born, so none is requisite from an infant on the very eve of attaining his majority." [Morgan v. Thorne, 7 Meeson & Welsby, loc. cit. 408.]

It is because the law regards an infant incapable of conducting a lawsuit in his own behalf that it has made provisions for the appointment of a next friend to act for him. The next friend derives his authority from the court which appoints him, and as he is appointed to institute and conduct the suit it follows that he has authority to do every act which the interest of the infant demands and the law authorizes.

If this statute is to be construed so strictly as to deny the next friend the authority to make an application for a change of venue, then we necessarily deny to infants who are unable to act for themselves the equal protection with other litigants that the statute was designed to afford. Not only would this be rank injustice to a class for whose interests the law has always been watchful, but it would raise a serious question as to the validity of the statute itself.

Under the same statute it has been held, from the very necessity of the case, that a municipal corporation can make this application by its attorney. Said this court in the case referred to: "As a corporation can only act through its agents, and as the statute does not otherwise provide, no reason is perceived why at least the same validity should not attend the act of the city attorney, as that of the mayor, in this regard." [Corpenny v. Sedalia, 57 Mo. 88.]

The statute which in its letter requires the act to be done by the party in person makes no more exception in favor of a corporation than in favor of an infant, and the necessity in the one case is no greater than in the other. As an infant of tender years can only act through his next friend it follows that his application must be made through that means or he be denied the protection of the statute entirely, and as already said the law makes no distinction as to the ages of infants. If in point of fact the infant in a particular case is old enough to understand what he is doing, and the trial court suffers him to

make the application in his own person and acts upon it, we are not now called upon to say that the action of the court would be erroneous, but it is intended here to say that in the suit of an infant by his next friend, the next friend is the proper person to make the application for a change of venue.

Our attention is called to section 4155, Revised Statutes 1889, in relation to changes of venue in criminal cases, wherein it is provided that if the defendant be under sixteen years of age his parent or guardian or other person may make the application for time.   But that section affords no light on the proposition in this case.   A defendant in a criminal case, whatever his age, has no next friend appointed to represent him; he must respond in his own name to the indictment.

The application under consideration is justly subject to criticism for its form of expression.   It runs in the name of the next friend and says that he has good reason to believe etc., that he can not have a fair and impartial trial for the reason stated.   But that criticism justly goes no farther than to the form of expression.   Reading the whole petition it is impossible to put any other meaning on it than that the party who it is apprehended will not have a fair trial, is the plaintiff in the suit.   The next friend speaks only as such, and his petition is addressed to the court; which appointed him, and which understands what suit he is talking about.   The ground on which the change is asked has no reference personally to the next friend, but it affects directly the interest of his ward; it is that the defendant has an undue influence over the inhabitants of Jackson county.   Therefore when the next friend says in his petition and affidavit that for that reason he can not have a fair trial in that county, he means that he can not have a fair trial of the cause in which he is made next friend.   To give it any other construction would be to allow a mere inaccurate form of expression to prevent

what under all the circumstances of the case, plain before the court, is the obvious meaning.

The circuit court of Jackson county committed no error in granting the change of venue on the application in question.

II.	*a.*	Upon the merits of the case I desire only to say that I concur in the conclusion that the plaintiff was not a passenger, and therefore the instructions given upon the theory that the jury might so find, were erroneous.

*b.*	And it was also error to instruct the jury that if the plaintiff was standing on the running-board while the train was moving at full speed, he was guilty of negligence that would preclude his recovery.	That would be a proper instruction if the plaintiff was of mature years, but as he was a child of nine years the question of whether or not he was, under those circumstances, guilty of negligence, was for the jury.

*c.*	I am also of the opinion that if the gripman struck at or pushed the boy, in the manner indicated in the boy's evidence, the act would come under the head of negligence and not willful assault.	I concur in the result that the judgment should be reversed and the cause remanded.

In the views expressed in paragraph I, relating to the subject of change of venue, *Gantt, C. J., Burgess, Brace* and *Robinson, JJ.*, concur; as to paragraph II, relating to the merits, *Brace, J.*, concurs.	*Gantt, C. J.*, and *Burgess, J.*, concur in clauses *a* and *b*.